**TEXAS DEPARTMENT OF HUMAN SERVICES OF THE STATE OF TEXAS, Petitioner,**

v.

**Gary HINDS, Respondent.**

No. D–4413.

Supreme Court of Texas.

Argued May 4, 1994.

Decided June 8, 1995.

Rehearing Overruled Sept. 14, 1995.

Edwin N. Horne, Christopher Johnsen, Dan Morales, Austin, for petitioner.

Howell Cobb, III, El Paso, for respondent.

HECHT, Justice, delivered the opinion of the Court.

The Texas Whistleblower Act provides that certain public employees discriminated against for reporting a violation of the law in good faith to an appropriate law enforcement authority may sue for damages and other relief.[1] The Act does not expressly state what causal connection a public employee must prove between his report and his employer's conduct before he is entitled to prevail in such a suit—that is, whether the report was the sole reason for the employer's actions, or only one reason among others, or something in between. We conclude that the report need not be the employer's sole motivation, but it must be such that without it the discriminatory conduct would not have occurred when it did. Inasmuch as the lower courts did not apply this rule, we reverse the judgment of the court of appeals and remand the case for a new trial.

**I**

The Texas Department of Human Services determines applicants' eligibility for assistance under various programs which it administers for the federal government, such as Medicaid, Aid to Families with Dependent Children, and food stamps. From 1976–1988 TDHS employed Gary Hinds as an eligibility caseworker, whose job it was to interview applicants for assistance and determine their eligibility.

For several years before 1987 the federal government had become increasingly strict in requiring that state agency files clearly establish eligibility for assistance. To assure quality control, federal employees audited randomly selected files. If excessive errors were found, states were subject to sanctions, including reductions in the amount of federal assistance provided. In an effort to avoid such sanctions, TDHS developed and instituted a similar auditing program to evaluate caseworkers, identify and correct common mistakes, and improve training. As with the federal quality control program, files were selected at random by a review team for evaluation using what was called a Service Review Instrument. This internal audit was thus referred to as an SRI review.

In 1987 Hinds' supervisor and other supervisors asked for and received permission from their program manager, Ralph Briones, to have caseworkers read over files selected for SRI review to correct any errors before the review. Hinds participated in this "pre-review" process at first but soon complained to Briones that it was illegal. When Briones did not respond, Hinds raised the same concern with Briones' superiors. Shortly thereafter the practice Briones had instituted was abandoned.

Hinds claims that, as a result of his report of what he considered to be illegal activity, his supervisors engaged in a pattern of retaliation. Shortly after his initial report to Briones, Hinds received an official reprimand, his first adverse personnel action in twelve years with TDHS. This was followed by an unfavorable employee performance evaluation for 1987. At Briones' direction, Hinds' immediate supervisor more closely scrutinized Hinds' work, a practice he claims caused more work for him and delayed the

---

1. Tex.Gov't Code §§ 554.001–.009 (amended by Act of May 25, 1995, 74th Leg., R.S., ch. 721, 1995 Tex.Gen. Acts ——, ——, formerly Tex.Rev. Civ.Stat.Ann. art. 6252–16a, Act of May 30, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.Gen. Laws 4751, *repealed by* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen. Laws 583, 986, and recodified.).

processing of his benefits applications. Hinds also claims that his supervisor began to refuse to help him handle difficult cases. Hinds' view of how TDHS treated him is shared to some extent by his co-workers.

In 1988 Hinds resigned due to what he contends was persistent, increasing pressure, and filed this suit for damages against TDHS, alleging a violation of the Texas Whistleblower Act. TDHS responded that the process Hinds complained of to Briones was not illegal; that Hinds' reports to Briones and Briones' superiors were not made in good faith; and that the personnel actions adverse to Hinds resulted from documented performance problems completely unrelated to Hinds' questioning of the SRI review process. There is evidence that Hinds had the lowest accuracy scores in his unit, that he repeatedly failed to arrive for work on time, and that he had serious problems getting along with his co-workers and supervisors. Hinds acknowledges his shortcomings but contends they were tolerated without criticism until he complained to Briones of the SRI review process.

The case was tried to a jury, who found: that Hinds reported in good faith that advance correction of SRI case files was illegal; that in retaliation TDHS constructively terminated or otherwise discriminated against Hinds; that TDHS' actions were either grossly negligent, willful or malicious; that Hinds' compensable damages were $18,000.00 past mental anguish, $89,278.98 lost earnings, $127,541.14 lost future earning capacity, and $47,806.38 lost retirement and other benefits; and that $85,000.00 exemplary damages should be assessed against TDHS. The trial court rendered judgment on the verdict, awarding Hinds all of the damages found by the jury plus prejudgment interest, for a total of $520,560.13.

TDHS has raised several complaints on appeal. We focus on one. The second question which the trial court submitted to the jury reads as follows:

Did the Department of Human Services constructively terminate, or otherwise discriminate, against Gary Hinds in retaliation for his report that advance correction of SRI case files was illegal?

The trial court refused to give the jury, in connection with this question, the following instruction requested in writing by TDHS:

You are instructed that the reporting of these activities must have been the principal reason for the Texas Department of Human Services retaliation. You are instructed that "the principal reason" means that the reporting of a violation of law was the cause of the harassment or discrimination.

The court of appeals held that Question 2 correctly submitted the controlling issue to the jury, and that TDHS' requested instruction added nothing. The appeals court, by a divided vote, modified the judgment for Hinds by discounting future damages to present value, which the court determined to be $118,912.81, and affirmed the judgment as modified. 860 S.W.2d 893. The dissenting justice would have reversed the award of mental anguish damages for want of evidence. 860 S.W.2d at 902–903 (Koehler, J., dissenting).

## II

■ We begin our analysis of this case by determining the proper standard of causation applicable in cases brought under the Texas Whistleblower Act. The issue is whether, for the employee to prevail, retaliation must be proved to have been the employer's sole motivation, or a principal or substantial motivation, or some lesser but still necessary factor, or mere animus which did not play at all in the employer's decision to act as he did. In resolving this issue our first recourse is, of course, to the language of the Act, which as we noted at the outset has been recodified since this lawsuit was filed. The Act was also amended a few days ago, and later in this opinion we will describe those amendments as they relate to causation. For our textual analysis, we refer to the pre-amendment recodified provisions inasmuch as they are identical in all material respects to the language of the Act in 1988.

The Act is not mute on the subject of causation, but neither is it outspoken. Section 554.002 of the Government Code states:

A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority.

Section 554.003(a) states:

A public employee whose employment is suspended or terminated or who is discriminated against in violation of Section 554.002 is entitled to sue for [damages and other relief].

These two sections require no causal link at all between a report of illegal conduct and the employer's alleged discriminatory conduct. Read very literally, these provisions would allow a public employee to sue for wrongful discharge if he had *ever* made the kind of report described, regardless of whether the report and discharge were in any way related. By this construction, the statute would give public employees life tenure for reporting activity believed in good faith to be unlawful.

Another provision of the Act, however, suggests the requirement of a causal connection. Section 554.004 states:

A public employee who sues under this chapter has the burden of proof, except that if the suspension or termination of a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension or termination is presumed, subject to rebuttal, to be *because* the employee made the report.

(Emphasis added.) The presumption of causation in certain circumstances implies that it must be proved in others. Otherwise, the presumption would be useless. This is sufficient reason for us to conclude that a public employee can recover under the Whistleblower Act only if he proves that he was suspended, terminated or discriminated against "because"—to use the same word in section 554.004—he reported a violation of the law in good faith to an appropriate law enforcement authority.

▪ Having determined that the statute requires a causal link, we must next determine what that link must be. The prescrip-

tive word, "because", is used not only in the Whistleblower Act but in several other statutes prohibiting employment discrimination based upon various factors. *E.g.,* Tex.Civ. Prac. & Rem.Code § 122.001 (jury service); Tex.Fam.Code § 14.43(m) (refusal to hire because of a child support withholding order); Tex.Gov't Code § 431.006 (active duty in state military in an emergency); Tex. Health & Safety Code § 502.017(c) (exercise of rights under the Texas Hazard Communication Act); Tex. Labor Code § 21.051 (race, color, disability, religion, sex, national origin, or age); *id.* § 52.051 (compliance with a valid subpoena to appear in a civil, criminal, legislative, or administrative proceeding); *id.* § 451.001 (seeking workers' compensation benefits or testifying in a workers' compensation proceeding). We have never considered the issue of causation in the context of the Whistleblower Act or any similar statute.

▪ We have in one instance involving a common law cause of action imposed a very strict standard of causation. In *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734–735 (Tex.1985), we held that an allegation by an employee that he was discharged for refusing to perform an illegal act states a cause of action. Recognizing that this is an exception to the long-established employment-at-will doctrine in Texas, we emphasized the limits on our decision:

That narrow exception covers only the discharge of an employee *for the sole reason* that the employee refused to perform an illegal act. We further hold that in the trial of such a case it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was *for no reason other* than his refusal to perform an illegal act.

*Id.* at 735 (emphasis added). Thus, a plaintiff must prove that his refusal to perform an illegal act was the sole cause of his discharge before he can recover damages from his former employer. An employer who discharges an employee both for refusing to perform an illegal act *and* for a legitimate reason or reasons cannot be liable for wrongful discharge.

*Sabine Pilot,* like the Whistleblower Act and the other statutes cited above, permits a

cause of action for retaliatory discharge. This similarity between the common law and statutory causes of action, however, is not alone sufficient to warrant applying the same causation standard in both types of cases. The Legislature is free to employ a different standard in a statute than this Court used in *Sabine Pilot*, and we think it did so in the word "because". We were quite specific in *Sabine Pilot*, and we think the Legislature would have been equally specific if it had intended to limit the various causes of action it has provided for employment discrimination to situations in which an employee's protected conduct was the sole reason for an employer's retaliation. At least, there should be some indication that by "because" the Legislature really meant "solely because". We find none in the Whistleblower Act.

Several courts of appeals have rejected the strict sole-cause standard of *Sabine Pilot* in the context of other statutes prohibiting employment discrimination. In *Wright v. Faggan*, 773 S.W.2d 352, 353 (Tex.App.—Dallas 1989, writ denied), the court held that an employer could be liable for terminating an employee for serving as a juror, a violation of section 122.001 of the Civil Practice and Remedies Code, even if other, legitimate reasons supported termination. In *Santex, Inc. v. Cunningham*, 618 S.W.2d 557, 559 (Tex. Civ.App.—Waco 1981, no writ), an employer argued that he could not be liable for discriminating against an employee for filing a workers' compensation claim, unless the claim was the sole reason for his actions. The court wrote:

> In our opinion such a construction reads something into the statute that is not there. We believe that the clear intent of the statute is that an employer may not use the filing of a Worker's Compensation claim as a reason to discharge or otherwise discriminate against an employee even if there are other reasons.

*Id.; accord Borden, Inc. v. Guerra*, 860 S.W.2d 515, 522 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.); *Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 390 (Tex.App.—Texarkana 1990, writ denied). While the court in *Santex* was not entirely clear about the role protected conduct must play in an employer's decision to sanction an employee before that decision is an actionable wrong, it rejected the employer's sole cause argument.

We conclude that the Whistleblower Act does not require an employee to prove that his reporting illegal conduct was the sole reason for his employer's adverse actions. We must still consider what proof of causation the Act does require.

■ Three decisions of the courts of appeals have touched on the causation standard in the Whistleblower Act. Two of the three do so only incidentally. In *City of Brownsville v. Pena*, 716 S.W.2d 677, 679–680 (Tex. App.—Corpus Christi 1986, no writ), the court upheld a jury question which asked whether an employer discriminated against an employee "in retaliation for reporting" a violation of the law because the question followed the wording of the Whistleblower Act. The court rejected the city's argument that the question was overly broad and should have been accompanied by a limiting instruction. However, the court's opinion did not quote the instruction requested by the city, and thus the import of the decision is uncertain. In *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 453 (Tex.App.—Austin 1989, writ denied), the jury was asked whether the reporting of illegal conduct was "the reason or one of the reasons" for terminating plaintiff's employment. In dicta, the court observed that while the city did not complain of the wording of the question, "the better practice would be to phrase the question in general terms: 'Do you find that Defendant terminated Plaintiff's employment for reporting a violation of law …?'" *Id.* at 453 n. 1. The court did not address whether the question inquired adequately about causation.

The third case is only slightly more instructive. In *Texas Department of Human Services v. Green*, 855 S.W.2d 136, 150 (Tex. App.—Austin 1993, writ denied), the court approved a jury question which asked, "'[D]id Defendant retaliate against Plaintiff for reporting … violations of law?'" Defendant had requested an instruction to the jury that it "would not be liable if it 'would have taken the same actions … without consideration of Plaintiff's reports.'" The court held

that it was not error to refuse to give the instruction because it added nothing to the question. The court's holding may have been correct in the circumstances, but its reasoning clearly was not. Contrary to what the court said, the requested instruction plainly tells the jury something the question does not, *viz.*, that if the employer had sufficient legitimate grounds for taking action against the employee, it could not be liable for the action simply because an additional ground was the employee's report of illegal conduct. The requested instruction may not be entirely correct, but it is not surplusage.

The Fifth Circuit has held that an instruction similar to the one requested in *Green* must be given in at least some cases under the Whistleblower Act. In *Davis v. Ector County*, 40 F.3d 777, 786–787 (5th Cir.1994), the district court instructed the jury that plaintiff was required to prove that "[h]e was discharged after reporting violations of the law and because he made such a report". The court refused to instruct the jury that if plaintiff was fired for insubordination he could not recover. The court of appeals held that the instruction given was impermissibly vague because it did not allow jurors to differentiate between legitimate and illegitimate motives for the employer's actions. *See also Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1179–1180 (5th Cir.1992) (quoting jury instruction given in Texas Whistleblower Act case).

*Davis* relied upon the view of three former Justices of this Court in a concurring opinion in *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 732 (Tex.1990) (Doggett, J., joined by Ray and Mauzy, JJ., concurring). The Court in that case held that plaintiff could not recover against his private sector employer on a whistleblower claim. Arguing that a private whistleblower action should be recognized in an appropriate case, the concurring opinion undertook to define what facts should have to be proved for recovery. Among them, the concurring opinion stated, "[T]he reporting of [wrongful] activities must have been *the principal reason* for the employer's retaliation." *Id.* at 732 (emphasis added). The concurring opinion cited no authority for this requirement,

claiming only that it "comports with the common standards for worker protection from dismissal for other types of activities...." *Id.* at 732 n. 21.

We believe there are compelling reasons why a principal-reason causation standard— sometimes called a substantial reason— should not be adopted in employment discrimination cases generally and whistleblower cases in particular. First, it is not clear what makes a reason "principal" or "substantial". Suppose a public employee is fired for two reasons: being drunk on the job and consequently seriously injuring a fellow employee months before, and reporting just yesterday that a supervisor used a public postage meter to mail one personal letter. Which reason is principal? If the former reason was not enough for the employer to discharge the employee, is the latter principal or substantial? Second, the Whistleblower Act does not seem to permit an employee's report of illegal activity to play any role, however small, in deciding whether to sanction him. Suppose an employee has a record of serious, repeated misconduct. Should an employer escape liability for discharging him if it is admitted that the report, though a minor consideration, was nevertheless "the last straw"? We think not. Third, an employer should not be liable for bad motives never acted upon. An employer who has sufficient sound reasons for discharging an employee should not incur liability merely for disliking the employee for reporting illegal conduct when that dislike played no part in the disputed personnel action.

The United States Supreme Court, in a different but related context, has summarized a fourth basis for rejecting a causation standard based upon principal or substantial reasons in employment discrimination cases. In *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), Doyle, an untenured school teacher, complained that he had been discharged for communicating to a local radio station the school principal's memorandum concerning a teacher dress code. The school district responded that Doyle had not been fired for this reason but for fighting with another teacher, arguing with school

cafeteria employees, swearing at students, and making obscene gestures to female students. The district court found that communication of the memo had played a substantial part in the school district's decision to discharge Doyle and granted him relief. The court of appeals affirmed. The Supreme Court reversed, holding that the determinative issue was not whether Doyle's constitutionally protected conduct was a substantial factor in the district's decision, but whether the district would have reached the same decision regardless of the protected conduct. Explaining its decision, a unanimous Court wrote:

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. The difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, and does indeed play a part in that decision— even if the same decision would have been reached had the incident not occurred. The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

*Id.* at 285–286, 97 S.Ct. at 575.

These arguments persuade us that the standard of causation in whistleblower and similar cases should be that the employee's *protected* conduct must be such that, without it, the employer's prohibited conduct would

not have occurred when it did. We think this best protects employees from unlawful retaliation without punishing employers for legitimately sanctioning misconduct or harboring bad motives never acted upon. Whistleblower statutes in other states use this causation standard. *See, e.g.,* 43 PA.STAT. § 1424(c) (West 1991) (an employer has a defense to a whistleblower claim if he "proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual"); S.C.CODE ANN. § 8-27–30(A) (Law. Co-op Supp.1993) (no action may be brought under the whistleblower statute unless "any previous proceedings have resulted in a finding that the employee would not have been disciplined but for the reporting of alleged wrongdoing.").

The United States Supreme Court has also prescribed a shifting burden of proof in employment discrimination cases. The employee has the burden of establishing a prima facie case of unlawful discrimination. The employer then has the burden of producing evidence of legitimate reasons for its actions. The employee has the burden of rebutting this evidence. While the burden of production shifts, the ultimate burden of persuasion remains on the employee. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–256, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207 (1981); *see also Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–247, 109 S.Ct. 1775, 1787–1789, 104 L.Ed.2d 268 (1989). Texas courts of appeals have adopted similar procedures in such cases. *See Farrington v. Sysco Food Servs.,* 865 S.W.2d 247, 251 (Tex.App.— Houston [1st Dist.] 1993, writ denied) (burdens of proof in state race discrimination case shift as provided by *McDonnell Douglas*); *Adams v. Valley Fed. Credit Union,* 848 S.W.2d 182, 185–187 (Tex.App.—Corpus Christi 1992, writ denied) (jury in age discrimination case must be instructed on the shifting burdens prescribed by *Burdine,* as in *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 822–823 (Tex.App.—Austin 1990, writ denied)); *Hughes Tool Co. v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston

[14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982) (plaintiff in workers' compensation retaliation case has the burden of establishing a causal link between discharge and the compensation claim, and once he does, the employer must rebut by showing a legitimate reason for discharge).

■ A whistleblower statute could specifically incorporate a burden-shifting approach. *E.g.,* KY.REV.STAT.ANN. § 61.103 (Michie 1993) (employee filing court action under whistleblower statute must show by preponderance of the evidence that the disclosure, alone or in connection with other factors, affected a personnel action; once an employee makes this prima facie showing, then the employer has the burden to prove by clear and convincing evidence that the disclosure was not a material fact in the personnel action). The Texas Whistleblower Act does not, and we are not at liberty to adopt this approach because the Act expressly provides, as we have noted above, that the burden of proof is on the employee. TEX.GOV'T CODE § 554.004. We note, however, that the 1995 amendments to this section add the following:

It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 5, 1995 Tex.Gen. Acts ——, ——. We express no opinion in this case whether the burden of proof is shifted under the amended statute.

### III

■ We next consider whether the district court employed the proper standard of causation in charging the jury, and if not, whether the error requires reversal of the judgment. As noted earlier, the Whistleblower Act states that when a public employee's termination occurs within ninety days of his reporting a violation of law, the report is presumed to have caused the termination. TEX.GOV'T CODE § 554.004. This presumption is rebuttable. In this case, however, Hinds resigned more than ninety days after he first questioned TDHS' file review policies and the presumption does not apply. The district court should, therefore, have instructed the jury as follows:

An employer does not discriminate against an employee for reporting a violation of law, in good faith, to an appropriate law enforcement authority, unless the employer's action would not have occurred when it did had the report not been made.

It did not do so. Rather, the court merely asked the jury in Question 2 whether TDHS discriminated against Hinds "in retaliation for his report". A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R.CIV.P. 277. The omission of a proper instruction in this case was error.

■ The district court's error was reversible if it "was reasonably calculated to cause and probably did cause rendition of an improper judgment". TEX.R.APP.P. 81(b). There was a serious dispute in this case whether the pre-review procedure was illegal, and whether TDHS discriminated against Hinds. Also, Hinds, it will be recalled, was not discharged but resigned, claiming constructive discharge. Hinds does not dispute the misconduct TDHS cites to justify its treatment of him. But Hinds did present substantial evidence of discrimination, supported by the testimony of co-workers. The evidence in this case was vigorously and convincingly disputed, and the jury might well have found that TDHS was or was not motivated by legitimate or illegitimate concerns. The absence of a proper causation instruction, in these circumstances, was reasonably calculated to prevent the jury from making the finding necessary to establish liability under the statute, thereby resulting in an improper judgment.

■ To complain of this error on appeal, TDHS was obliged to make a written request to the district court for a substantially correct instruction. TEX.R.CIV.P. 278. TDHS did not request the instruction that should

have been given, but instead requested the instruction quoted above referring to the "principal reason" for the retaliation and defining that term. We believe this request nevertheless preserved error for two reasons. First, TDHS took the instruction from the concurring opinion in *Winters* that was endorsed by three Members of this Court. While separate opinions of Justices on this Court are ordinarily accorded little authority, there was no other Texas law to guide TDHS. Second, the request called the trial court's attention to the causation element missing in Question No. 2. In *State Department of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992), we stated: "There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." Under *Payne*, TDHS properly preserved error on its jury charge complaint.

## IV

TDHS also complains of the court of appeals' holding that the trial court's award of $18,000.00 in mental anguish damages was not supported by legally sufficient evidence. We granted the application for writ of error on this point of error, in addition to the one we have addressed, to correct the court of appeals' holding. 37 Tex.Sup.Ct.J. 610 (Mar. 30 1994). Because of our disposition of this case on other grounds, we no longer need to reach this point of error.

\*   \*   \*   \*   \*   \*

Inasmuch as we have concluded that the district court failed to instruct the jury properly, and that this error was reversible, we reverse the judgment of the court of appeals and remand this case to the trial court for a new trial.