TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-97-00329-CV






Ray L. Ender, Appellant



v.



City of Austin, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 95-09218, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING 







 This case arises out of a dispute between Appellant Ray Ender and the City of Austin over
the imposition of an alleged ticket-writing quota for police officers in the Motorcycle Division of the Austin
Police Department. After Ender reported the alleged illegal quota, the Department transferred him from
the Motorcycle Division to the Patrol Division. Ender then sued the City, claiming that his transfer violated
the Whistleblower Act. See Tex. Gov't Code Ann. §§ 554.001-.010 (West 1994 & Supp. 1997). (1) The
trial court granted the City's motion for summary judgment on the ground that Ender could not prove the
causation element of his cause of action. Because we conclude that the City did not meet its burden of
proof in the summary-judgment proceeding, we will reverse the trial-court judgment and remand the cause
for a trial on the merits.


BACKGROUND

 A police officer since 1974, Ender began working in the Department's Motorcycle Division
on May 3, 1987. Ender alleges that the City illegally evaluated officers in the Motorcycle Division based
on a ticket-writing quota system. (2) According to Ender, on February 14, 1995, he discussed with his
supervisor, Sergeant Sam Warren, the illegality of the alleged quota system. On May 1, 1995, Warren told
Ender that he was recommending Ender's transfer because of his low productivity in ticket writing. During
this conversation, Ender again informed Warren of his belief that the evaluation system imposed an illegal
quota for ticket writing. Also on May 1, Ender discussed with Captain Joe Riffe the plan to transfer him
and the transfer's basis in the allegedly illegal quota system. Through his attorney, Ender then reported the
Department's alleged violation of the no-quota law to City Attorney Bob Rose on May 5, 1995. On either
May 14 or May 15, 1995, Ender complained of his transfer's illegal basis to Deputy Chief Pulatie. Ender
also notified Internal Affairs of the alleged violation on May 19, 1995. The City transferred Ender, effective
May 21, 1995, to the Patrol Division.

 Ender sued the City, alleging discrimination violating the Whistleblower Act. See Tex.
Gov't Code Ann. §§ 554.001-.010. The Whistleblower Act prohibits termination of or discrimination
against a public employee who in good faith reports a violation of law to an appropriate law enforcement
authority. Id. § 554.002. Ender claimed that the Police Department transferred him from the Motorcycle
Division to the Patrol Division because he reported the illegal imposition of ticket quotas by the Motorcycle
Division. The City did not dispute that Ender made the reports. The City only disputed whether the reports
led to Ender's transfer. The City argued that the transfer occurred solely because of job performance
problems, which admittedly included low ticket-writing productivity. The City moved for summary
judgment, arguing that: (1) Ender could not prove a causal link between his report and the transfer and (2)
Ender could not prove he had a good-faith belief that the alleged quota was illegal. The trial court granted
the City summary judgment based on Ender's inability to prove a causal link.

 On appeal, Ender argues as his sole point of error that a genuine issue of fact existed
regarding causation. The City argues by cross-point that the trial court erred in failing to grant summary
judgment on the ground that Ender did not have a good-faith belief that the quota was illegal.


STANDARD OF REVIEW

 We review the trial court's summary judgment de novo. A movant for summary judgment
must show that no genuine issue of material fact exists and thus it is entitled to judgment as a matter of law. 
See Nixon v. Mr. Property Mgt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Evidence favorable to the
non-movant will be taken as true when determining whether there is a disputed material fact issue
precluding summary judgment. See id. In addition, the reviewing court must consider every reasonable
inference favoring the non-movant and resolve any doubts in the non-movant's favor. See id. at 549.

 When a defendant seeks summary judgment, it must conclusively disprove at least one
element of the plaintiff's cause of action. See Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.
1991). The burden of producing controverting evidence sufficient to raise a fact issue shifts to the plaintiff
only if the defendant has disproved an essential element. See City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678 (Tex. 1979).


DISCUSSION

 In his only point of error, Ender complains that the trial court erred in granting summary
judgment based on its finding that Ender failed to establish a causal link between his report and subsequent
transfer. The City responds that it conclusively negated this essential element of Ender's claim with its
summary-judgment evidence of Ender's performance problems, including low ticket-writing activity.

 In their examination of the causation issue, neither the parties nor the trial court discussed
the standard established by the Texas Supreme Court in Department of Human Services v. Hinds. See
904 S.W.2d 629, 636 (Tex. 1995). The Hinds court analyzed what role the report of illegal conduct
should play in the employer's decision to take adverse action against the employee. The court considered
both a sole-reason standard and a principal-reason standard before settling on a but-for rule. The court
first determined that the legislature would have specified a sole-reason standard if it had intended to so limit
the employee's cause of action. Id. at 634. The Hinds court thus concluded that the Whistleblower Act
does not require an employee to prove that his reporting illegal conduct was the sole reason for his
employer's adverse actions. Id.

 Hinds also rejected a principal-reason causation standard for four reasons. Id. at 635. 
First, the court pointed out the difficulty involved in determining what makes a reason "principal." Id. 
Second, the court found that the Whistleblower Act does not permit an employee's report of illegal conduct
to play any role, no matter how small, in an employer's decision to sanction him. Id. Third, the court
determined that the principal-reason standard might harm employers who made the disputed personnel
decision for sufficient sound reasons and did not act on any bad motive. Id. Finally, the court expressed
concern that the principal-reason standard might shield an employee from adverse personnel action, even
when warranted, because the report would inevitably play a part in the decision. Id.

 Instead, Hinds established a but-for causation standard: "[T]he employee's protected
conduct must be such that, without it, the employer's prohibited conduct would not have occurred when
it did." Id. at 636. Under this standard, the City could not negate the causation element merely by showing
that it had other reasons for transferring Ender. The but-for standard requires conclusive proof that Ender's
report did not play a role, however small, in the Police Department's decision to transfer him on May 21,
1995.

 The City offered Sergeant Warren's affidavit as its only summary-judgment evidence
negating the report's part in the transfer decision. Warren was Ender's direct supervisor and made the
original decision to transfer Ender. In his affidavit, he states that Ender's allegation "formed no part of my
decision to transfer him." He further states that he based the transfer decision solely on Ender's
substandard job performance. The Texas rule permits granting summary judgment based on
uncontroverted testimonial evidence of an interested witness only "if the evidence is clear, positive and
direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily
controverted." Tex. R. Civ. P. 166a(c).

 The Texas Supreme Court has interpreted the language "could have been readily
controverted" to mean more than that the movant's summary-judgment proof could have been easily and
conveniently rebutted. See Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989). Instead, the testimony
at issue must be of a type that can be effectively neutralized by opposing evidence. See id. Thus, summary
judgment is inappropriate in a case in which the credibility of the affiant is likely to be a dispositive factor. 
See id.; but see also Texas Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 313 (Tex. 1994)
(holding that a worker who brought a retaliatory-discharge action against his employer under the Workers'
Compensation Act should have produced evidence of facts and circumstances to counter the employer's
neutral explanation).

 Especially at the summary-judgment stage, direct evidence of improper discrimination is
often absent in employment-discrimination cases. See Castaneda v. Texas Dept. of Agriculture, 831
S.W.2d 501, 505 (Tex. App.--Corpus Christi 1992, writ denied). Construing the evidence in the light
most favorable to Ender, his ticket-writing average appears to have remained consistent, albeit on the lower
end of the spectrum, since 1991. No drastic downward turn relative to other years appears to have
occurred in 1994 or 1995. With its summary-judgment motion, the City submitted some memos regarding
Ender's performance (3) and an April 1995 performance evaluation recommending his transfer. The City's
discovery responses, incorporated by reference in Ender's summary-judgment motion, included Ender's
December 1994 evaluation (dated February 14, 1995), which showed improvement in some areas over
his June 1994 evaluation. Warren had written three of the four memos regarding Ender's performance
before the six-month period governing the December 1994 evaluation, which showed improvement. No
mention was made of the fourth memo in either the December 1994 evaluation or the April 1995
evaluation. The only significant difference in the two evaluations was that the April 1995 evaluation
described in more detail Ender's reported failure to maintain his motorcycle properly. Ender's deposition
testimony indicated that Warren's depiction of this equipment "abuse" may have omitted a description of
the circumstances leading to the problems with his motorcycle. A reasonable inference in Ender's favor
would be that his February 14 report to Warren about the illegality of the evaluation system, not
performance problems, led to the April 1995 evaluation recommending his transfer.

 Although the Department alleged that low ticket-writing activity and other unspecified
performance problems were the reasons that Warren made the original decision to transfer Ender, the fact
remains that the Department effected the transfer after Ender reported its allegedly illegal basis to his
superiors. The Department's reasons for following through with Ender's transfer will determine the
disposition of the causation issue, and this issue of intent depends so heavily on the credibility of the
witnesses that it is not suitable for summary judgment. See Spoljaric v. Percival Tours, Inc., 708 S.W.2d
432, 434 (Tex. 1986); Fleetwood v. Medical Center Bank, 786 S.W.2d 550, 556 (Tex. App.--Austin
1990, writ denied). Therefore, we sustain Ender's point of error because the City produced no evidence
conclusively negating the causation element.


DEFENDANT'S CROSS-POINT OF ERROR

 As a cross-point of error, the City raises the trial court's failure to grant summary judgment
based on an additional argument in its motion. In addition to the causation issue, the City argued that it
could conclusively negate another essential element of Ender's claim--his good-faith belief that the
complained-of conduct was illegal. See Tex. Gov't Code Ann. § 554.002(a) (West 1994 & Supp. 1997). 
The Act protects a public employee who in good faith reports his employer's violation of a law, even if he
is wrong about the legal effect of the facts. See Lastor v. City of Hearne, 810 S.W.2d 742, 744 (Tex.
App.--Waco 1991, writ denied). The trial court found that the City had not established Ender's lack of
a good-faith belief that the Department's activity was illegal and therefore refused to grant summary
judgment on that basis.

 The Texas Supreme Court has defined the term "good faith" as used in the Act to mean
that: "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's
belief was reasonable in light of the employee's training and experience." Wichita County v. Hart, 917
S.W.2d 779, 784 (Tex. 1996). Ender presented summary-judgment evidence that he believed that the
Department's evaluation system violated the law. This subjective belief satisfies the first prong. See Harris
County Precinct Four Constable Dep't v. Grabowski, 922 S.W.2d 954, 956 (Tex. 1996).

 Both the Hart and Grabowski courts noted that the second prong of the good-faith test
requires that a police officer's belief be examined more closely for reasonableness than the belief of a public
employee in a non-law-enforcement profession. See Grawbowski, 922 S.W.2d at 956; Hart, 917
S.W.2d at 785. Even if we examine reasonableness more closely, the City's evidence does not establish
the objective unreasonableness of Ender's belief. Instead of direct evidence, the City relied on its
interpretation of the no-quota statute to support its theory that Ender's belief was unreasonable. The City
reasoned that because the statute prohibits requiring a "predetermined or specified" number of tickets,
Ender's acknowledgment that the Department requires officers to meet an average standard indicates that
he could not have had a good-faith belief in his claim of illegal activity. Whether Ender or the City is correct
about the legality of the Department's evaluation system is irrelevant for our purposes. What matters is that
reasonable minds could come to different conclusions about the statute's application to the evaluation
system. The City's interpretation neglects the implications of the language in the no-quota statute stating
that state agencies or subdivisions may not "establish or maintain, formally or informally, a system,
program, or plan" for evaluating employees based on the issuance of a specified number of tickets. See
Act of June 16, 1991, 72d Leg., R.S., ch. 657, 1991 Tex. Gen. Laws 2406 (current version at Tex.
Transp. Code Ann. § 720.002 (West 1997)) (emphasis added). A reasonable employee could perceive
the Department's ticket-average system as an informal way of maintaining issuance of a certain number of
tickets. Ender's position as a police officer does not provide him with the special knowledge that statutory
interpretation requires. The City's argument does not provide evidence that Ender's belief was objectively
unreasonable, even for a police officer.

 The objective-reasonableness requirement ensures that an employer violates the
Whistleblower Act only "if a reasonably prudent employee in similar circumstances would have believed
that the facts as reported were a violation of law." Hart, 917 S.W.2d at 785. The City argues that this
requirement obliges Ender to produce summary-judgment evidence such as affidavits from other officers
to establish that his view was that of a reasonably prudent employee in similar circumstances. We disagree. 
Imposing this burden would grant the Act's protection to a reporting employee only if he could produce
other employees willing to testify against their employer. In effect, the burden would nullify the Act. In fact,
however, Ender's deposition testimony indicated that other officers shared his view of the evaluation
system. The City produced no controverting evidence. Because the City's summary-judgment evidence
did not negate the good-faith element of Ender's claim, we overrule the City's cross-point of error.


CONCLUSION

 Because we sustain Ender's point of error, we reverse the trial-court judgment and remand
the cause for further proceedings.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Reversed and Remanded

Filed: October 23, 1997

Do Not Publish

1. Although the Legislature amended the Act effective June 15, 1995, Section 11 of the amendatory
act provides that discrimination occurring prior to that date will continue to be governed by the former law. 
Because the alleged discriminatory transfer occurred on May 21, 1995, the former law controls this cause
of action.
2. See Act of June 16, 1991, 72d Leg., R.S., ch. 657, 1991 Tex. Gen. Laws 2406 (current version
at Tex. Transp. Code Ann. § 720.002 (West 1997)) (prohibiting establishment of a quota for tickets).
3. The four memos were dated as follows: July 1992, January 1994, March 1994, and December
1994.


ined the term "good faith" as used in the Act to mean
that: "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's
belief was reasonable in light of the employee's training and experience." Wichita County v. Hart, 917
S.W.2d 779, 784 (Tex. 1996). Ender presented summary-judgment evidence that he believed that the
Department's evaluation system violated the law. This subjective belief satisfies the