**AFFIRMED and Opinion Filed June 21, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00384-CV

## FERNANDO HERRERA, Appellant
## V.
## DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07866**

## MEMORANDUM OPINION
Before Justices Partida-Kipness, Smith, and Breedlove
Opinion by Justice Smith

Appellant Fernando Herrera appeals from the trial court's summary judgment in favor of appellee Dallas Independent School District (DISD) on appellant's retaliation claim under the Texas Whistleblower Act. On appeal, Herrera argues the trial court erred in granting DISD's motions for summary judgment because a question of fact exists as to whether his 2017 protected reports to CPS played a role in DISD's decision to terminate him. For the reasons discussed below, we affirm the judgment of the trial court.

**Factual Background and Procedural History[1]**

Herrera began his employment with DISD in August 2013 as an intern in the Alternative Certification program. During the 2014–2015 school year, Herrera began reporting misconduct by two other teachers at McShan Elementary, the school where he was assigned. On February 24, 2015, Herrera sent an anonymous report to DISD's Child Abuse and Domestic Violence Prevention Office accusing J. Rivera of sexually harassing a female teacher and discussing students in a sexual way. Herrera also sent the information to local media outlets and the Texas Education Agency. Rivera was placed on administrative leave while DISD's Professional Standards Office investigated. The Professional Standards Office concluded that the allegations were unfounded. Herrera also made a report to Child Protective Services (CPS) that another teacher at the school, J. Aleman, physically harmed a student. Aleman was also placed on administrative leave while CPS investigated the report. Subsequently, Rivera and Aleman returned to teaching at McShan Elementary.

Herrera received a positive performance evaluation for the 2014–2015 school year, and DISD continued his employment for the 2015–2016 school year under a probationary teacher contract. In October 2015, Herrera again reported suspected child abuse by a colleague. At the close of the 2015–2016 school year, Herrera's

---

[1] The underlying facts and procedural history of this case are well known to the parties; thus, we limit our discussion of the facts to those established in the summary judgment proceedings below and relevant to our determination of whether the trial court erred in granting summary judgment for DISD. *See* TEX. R. APP. P. 47.4; *see also Herrera v. Dallas Indep. Sch. Dist.*, 609 S.W.3d 579 (Tex. App.—Dallas 2020, pet. denied) (prior appeal reversing trial court's grant of DISD's plea to the jurisdiction).

principal recommended that he receive a teacher certification through DISD and commended him on his job performance for the year.

During the 2016–2017 school year, Herrera's interpersonal conflicts with Rivera and Aleman, as well as with other colleagues, continued. The conflicts became a distraction at the school and were disruptive to the school's educational environment. On February 26, 2017, Herrera contacted his principal and claimed that Rivera bullied and threatened him. Although the principal assured Herrera that his concerns would be addressed and that he should contact police if he felt he was in danger, Herrera sent an email to a local news station and current and former school staff that accused Rivera of harassment and bullying. The email included Herrera's 2015 anonymous report to DISD in which he accused Rivera of sexually harassing a teacher and discussing students in a sexual way. Within this email, Herrera also identified, by name, a minor DISD student who had been the alleged victim of child abuse. Herrera subsequently sent similar emails, several of which also contained the minor victim's name, to various media outlets, Immigration and Customs Enforcement within the Department of Homeland Security, and other third parties.

On February 27, 2017, Herrera sent another email to DISD staff, including the Chief of the DISD Police Department, and accused Rivera of harassment and criminal misconduct. Rivera, in turn, accused Herrera of bullying and threatening him. Their principal encouraged them to contact DISD's Employee Relations

–3–

Department for assistance with their conflict. Rivera contacted Employee Relations; Herrera did not. The conflict continued.

Both Herrera and Rivera were required to attend a formal conference with their principal and her supervisor. They were advised to comply with DISD's employee standards of conduct. They were warned that failure to comply or improve in the areas discussed could result in disciplinary action. Unfortunately, the conflict between the two continued. Herrera continued making complaints about Rivera to his principal and, on March 31, 2017, also mentioned a concern about Aleman. Aleman had already been placed on administrative leave on March 30 based on two other teachers' reports of suspected child abuse by Aleman. On that same day, Herrera made a report to CPS concerning Aleman inappropriately touching a student several days in a row on the playground.

On April 5, 2017, the principal had a second formal conference with Herrera and Rivera regarding complying with DISD policy and not disrupting the school. She subsequently went on medical leave and an acting principal took over her duties at the school. The acting principal began receiving reports in May 2017 that Herrera was spreading accusations about his colleagues and was encouraging staff and parents to file complaints against Rivera and Aleman.

On May 15, 2017, Rivera and Aleman each filed Level I grievances regarding Herrera's misconduct. On May 16, 2017, Herrera made another report to CPS regarding a mother's complaint to him that Rivera inappropriately touched her child

–4–

in the classroom. The acting principal investigated Rivera and Aleman's grievances as directed and, on May 18, DISD placed Herrera on administrative leave with pay pending a formal investigation.

DISD hired Locke Lord LLP to investigate the allegations of misconduct relating to the conflict involving Herrera, Rivera, and Aleman. Ultimately, Locke Lord found that Herrera engaged in bullying behavior in violation of DISD's employee standards of conduct, that he attempted to influence parents and staff to make false reports against Rivera and Aleman, and that Rivera bullied Herrera by sending him harassing and offensive text messages. Locke Lord also noted that Herrera inappropriately identified, by name, a minor student who was an alleged victim in a sexual abuse investigation at the school to several media outlets and third parties. Locke Lord did not substantiate Herrera's claim that DISD placed him on administrative leave in retaliation for reporting Rivera and Aleman's misconduct. Instead, Locke Lord found that Herrera had been placed on administrative leave based on his own alleged misconduct, which had been supported by written statements from seven individuals.

As a result of the investigation, Rivera received a reprimand for bullying a colleague, and the principal recommended to DISD that Herrera be terminated.[2] DISD notified Herrera in a letter dated December 11, 2017, that it was

---

[2] In a separate report, Locke Lord concluded there was no evidence to support a finding that Aleman violated DISD policy.

recommending termination of his employment based on the findings of the investigation. Herrera appealed to the Texas Education Agency, and DISD subsequently decided not to pursue a mid-year termination of Herrera's contract due to the length of the appeal process extending through the end of the school year. Instead, the DISD Board voted to terminate Herrera's probationary contract at the end of the 2017–2018 school year and notified Herrera of its decision by letter on April 26, 2018.

Later that year, Herrera filed suit against DISD alleging it violated the Texas Whistleblower Act when it terminated him in retaliation for making reports to CPS concerning teachers inappropriately touching students. DISD filed an answer generally denying Herrera's whistleblower claim and asserting various affirmative defenses, including that it would have taken the action against Herrera "based solely on information, observation, or evidence that is not related to the fact that he made any report that is purportedly protected by the Whistleblower Act." DISD also moved for summary judgment on this affirmative defense and separately moved for summary judgment arguing that the Board did not know about, or rely on, Herrera's CPS reports in reaching its decision and, thus, Herrera could not raise a genuine issue of fact that his CPS reports were the "but for" cause of his termination.

Herrera filed a consolidated response to both motions for summary judgment, and DISD filed a consolidated reply. After a hearing, the trial court granted

DISD's motions for summary judgment and entered a take nothing judgment against Herrera. This appeal followed.

## Summary Judgment Standard of Review

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

A defendant is entitled to summary judgment on a plaintiff's cause of action if the defendant conclusively negates at least one essential element of the plaintiff's cause of action or conclusively establishes all the elements of an affirmative defense as a matter of law. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). We must affirm the summary judgment if any ground asserted in the motion, and preserved for appellate review, is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

## Texas Whistleblower Act

The Texas Whistleblower Act provides that "[a] state or local government entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). The Act defines a local government entity to include a public school district. *Id.* § 554.001(2)(C).

To prove a claim under the Whistleblower Act, the public employee "must prove that the adverse action 'would not have occurred when it did' if the employee had not reported the violation." *Off. of Att'y Gen. of Tex. v. Rodriguez*, 605 S.W.3d 183, 192 (Tex. 2020) (quoting *Tex. Dep't of Hum. Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)). This but-for causation standard does not require the plaintiff to prove that "the report was the 'sole' or the 'substantial' reason for the adverse personnel action." *Rodriguez*, 605 S.W.3d at 192. However, an adverse action "'based solely' on reasons unrelated to a good-faith report of a legal violation destroys the causal link." *Id.* Thus, it is an affirmative defense to an employee's whistleblower claim that the employing local government entity "would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a [protected] report." TEX. GOV'T CODE § 554.004(b).

## Analysis

On appeal, Herrera presents one global issue attacking the trial court's order granting DISD's two motions for summary judgment: "Could a jury find that DISD terminated Mr. Herrera because of his protected reports to CPS involving the inappropriate touching of children?" Generally, Herrera argues that the Board had knowledge of his CPS reports and that DISD's inconsistent reasons for terminating him create a genuine issue of material fact.

We first turn to whether the trial court erred in granting DISD's motion for summary judgment on its section 554.004(b) affirmative defense. DISD argues that appellant would have been, and was, terminated for substantiated misconduct, regardless of the reports to CPS. DISD contends that Appellant failed to present any evidence indicating DISD would not have terminated him for the substantiated misconduct in his summary judgment response. We agree.

In support of its motion for summary judgment on its affirmative defense, DISD attached an affidavit by Robert Abel, DISD's Assistant Superintendent of Human Capital Management, which included numerous DISD documents, such as policies, handbooks, and personnel records. Abel testified that he had been a member of DISD's Legal Review Committee (LRC) since January 2016. The LRC was comprised of representatives from Human Capital Management, Police and Security, School Leadership, Operations, and Legal Services. The LRC reviewed employee documentation for potential personnel actions, such as terminations,

suspensions, demotions, and criminal background reports. To place a proposed personnel action before the committee, an employee's immediate supervisor prepared a letter of recommendation regarding the action, including the reasons for the recommendation and supporting documentation, and sent it to the next level supervisor. If the next level supervisor approved of the recommended action, the packet was sent to Employee Relations, which submitted it to the LRC for consideration. According to Abel, the LRC "independently determines whether the recommended personnel action coincides with the documented misconduct of the employee." The LRC's decision is communicated back to the employee's supervisor, and Employee Relations notifies the employee by letter of any personnel action. When the personnel action is termination at the end of a probationary contract period, the LRC notifies the employee of its intent to recommend termination to the Board of Trustees. The Board makes the final termination decision.

As to Herrera's ultimate termination, Employee Relations became involved before receiving an official letter of recommended personnel action because of the continued disruption at the school from the interpersonal conflict between Herrera, Rivera, and Aleman. It was not until after Herrera's principal reviewed the Locke Lord report that she sent an administrative recommendation to the LRC that Herrera be terminated based on his violation of Board policy and his breach of student privacy. The letter makes no mention of Herrera's reports to CPS. Furthermore, the

principal testified by affidavit that she was not aware Herrera made reports to CPS, that the reports played no role in any action she took toward Herrera, and that she assisted three other teachers in making CPS reports against Aleman, which concern the same allegations in Herrera's CPS report.

The LRC reviewed the principal's recommendation, as well as its supporting documentation (the Legal Review Packet), which included the Locke Lord report. The LRC was not given the exhibits to the Locke Lord report. On December 6, 2017, the LRC met and discussed the recommendation to terminate Herrera. Abel testified that the LRC was concerned with Locke Lord's findings that Herrera engaged in bullying behavior toward two other teachers in violation of Board policy, especially his mischaracterization of a colleague's text message to suggest that his colleague was a pedophile, and Herrera's breach of student confidentiality and privacy in violation of Board policy and state law. Abel referenced the following two sections of the Locke Lord report as causing the LRC the most concern: (1) Herrera's conduct regarding the text message was the "equivalent of spreading a malicious rumor and, as such, constitutes 'workplace aggression' intended to 'demoralize, intimidate, or humiliate' a colleague" and (2) Herrera's identification, by name, of a minor student who had been the suspected victim in a sexual abuse investigation of a teacher was "an alarming breach of that student's privacy." Abel further testified that the LRC's decision to recommend termination was "based

solely on the information contained in the Legal Review Packet—primarily, the Locke Lord Report."

As to whether the LRC considered Herrera's CPS reports, Abel testified as follows:

> There was no discussion of Mr. Herrera's CPS reports at the December 6, 2017 Legal Review Committee meeting. I was not aware that Mr. Herrera had made a report to CPS on March 31, 2017 regarding alleged misconduct by [J.] Aleman. To my knowledge, the Legal Review Committee was not aware that Mr. Herrera had made such a report to CPS on March 31, 2017. I was also not aware that Mr. Herrera had made a report to CPS on May 16, 2017 regarding alleged misconduct by [J.] Rivera. To my knowledge, the Legal Review Committee was not aware that Mr. Herrera had made such a report to CPS on May 16, 2017. The Legal Review Committee did not consider the March 31, 2017 or May 16, 2017 reports to CPS in making its decision to recommend the termination of Mr. Herrera's employment.

Abel further testified that the LRC recommended termination of Herrera's employment "based solely on information unrelated to the fact that Mr. Herrera had made reports to CPS on March 31, 2017 and May 16, 2017."

DISD's December 6, December 11, and March 29 letters to Herrera support Abel's testimony. DISD's December 6, 2017 letter provided Herrera with notice that it was reporting his misconduct to the State Board of Educator Certification and that he may be subject to sanctions. In DISD's letter to the Texas Education Agency, it notified the agency that Herrera was on administrative leave pending termination and that his termination had been recommended "for bullying behavior to his co-workers and for releasing a minor student's name that was a suspected victim in a

sexual abuse investigation to several media outlets and third parties." The State Board for Educator Certification and Herrera ultimately agreed to a sanction in lieu of formal disciplinary proceedings. The Agreed Final Order reprimanded Herrera for violating "Title 19, Texas Administrative Code §247.2(3)(A) by providing the name of a minor/student involved in a Child Protective Service Investigation to a local media outlet."

The December 11, 2017 letter advised Herrera that the recommendation to terminate his employment came as a result of the concluded investigation. The letter specifically listed the following findings from the investigation[3]:

1. Intentionally mischaracterized a text message to falsely suggest that a colleague is a pedophile;

2. Attempting to influence and coerce parents and fellow teachers to file complaints against a colleague;

3. Telling students and staff that a colleague directed profane language to you;

In addition to the foregoing instances of egregiously unprofessional misconduct, you also sent an e-mail to several media outlets and third parties, including the Department of Health Services, the Dallas Morning News, WFAA and Dallas-area immigration attorneys which improperly identified, by name, a minor student who had been the suspected victim in a sexual abuse investigation. In doing so, you committed an alarming breach of that student's privacy. This action is a violation of Board policy FO (LOCAL).

Although DISD choose not to pursue mid-year termination due to the length of the appeal process, DISD notified Herrera by a March 29, 2018 letter that the Superintendent would be recommending for approval to the Board that Herrera's

---

[3] Herrera takes issue with the last sentence of the letter, claiming that DISD cannot even agree on the policy that Herrera violated because FO (LOCAL) governs Student Discipline. DISD responds that this was a clear typographical error and that it should state FL (LOCAL), which governs Student Records. Regardless of which particular Board policy the prohibition of disclosing a minor victim's name to the public falls under, the summary judgment evidence shows that such disclosure is a violation of Board policy and the Educators' Code of Ethics.

contract end at the conclusion of the contract period. Abel attended the April 26, 2018 Board meeting at which the Board discussed the Superintendent's recommendation and voted unanimously to terminate Herrera's probationary contract at the end of its term, as well as the probationary contract of twenty other employees. The reason given on the list of non-renewal recommendations provided to the Board regarding Herrera was "misconduct."

Our review of the Locke Lord report also supports DISD's assertion that it did not consider Herrera's CPS reports in its decision to terminate him. Although the report references CPS and indicates that CPS investigated Rivera and there was ongoing investigation as to Aleman, the report does not expressly indicate that it was Herrera who reported any misconduct to CPS. Instead, the report sets out multiple instances in which Herrera tried to convince others to report misconduct to CPS and provides that Herrera stated in his interview that he "talked to CPS." Additionally, in one portion of the report, Locke Lord cautioned,

> Allegations of child abuse are very serious and should be dealt with in strict accordance with District protocols, not through the rumor mill. If Mr. Herrera learned that any abuse or inappropriate contact may have occurred, his responsibility was to report that conduct to appropriate authorities ("a law enforcement agency, Child Protective Services, or [the] appropriate state agency").

(quoting DISD's Employee Handbook) (change in original).

In Herrera's response to DISD's motions for summary judgment, he argued that DISD failed to conclusively prove that his protected activity did not play any

role, however small, in the decision to terminate him. He pointed to the Board Packet, the same packet of information submitted to the LRC, as proof that the Board knew about his CPS reports. He also asserted that DISD listed reasons for terminating him in its interrogatory responses that were unsubstantiated in the Locke Lord report and, thus, because it gave inconsistent reasons for terminating him, a fact issue existed.

As we have set out above, we have not found any place in the Legal Review Packet or the Board Packet that expressly states that Herrera was the one who made the CPS reports against Rivera and Aleman. Furthermore, even taking Herrera's assertion that the Board knew about the CPS reports as true, such evidence does not raise a genuine issue of material fact as to DISD's affirmative defense that it would have terminated him for the substantiated allegations regardless of his CPS reports. *See, e.g.*, *Steele v. City of Southlake*, 370 S.W.3d 105, 118–19, 123–24 (Tex. App.—Fort Worth 2012, no pet.) (explaining that section 554.004(b)'s affirmative defense precludes liability when "the evidence conclusively establishes that any possible consideration by the employer of the fact that the employee made a report was only superfluous to the adverse employment action" and concluding that employer established it would have fired employee for admitted untruthfulness regardless of protected report). Moreover, we agree with DISD that Herrera misinterprets DISD's interrogatory responses. DISD's response as to why Herrera was terminated is consistent with its summary judgment argument that it terminated Herrera for the

reasons listed in its December 11, 2017 letter. The fact that DISD listed unsubstantiated allegations along with substantiated allegations in response to a broader interrogatory, or even placed Herrera on leave to investigate potential misconduct that ultimately was unsubstantiated, does not detract from the substantiated misconduct expressly listed in the December 11, 2017 letter.

We conclude that DISD conclusively established its affirmative defense as a matter of law and that Herrera failed to raise a fact issue in response. Therefore, the trial court did not err in granting DISD's motion for summary judgment as to its affirmative defense. Because we have upheld summary judgment in favor of DISD on its affirmative defense, it is not necessary for us to decide whether the trial court erred in granting DISD's motion for summary judgment as to the element of causation in Herrera's whistleblower claim. *See* TEX. R. APP. P. 47.1 (we must hand down an opinion as brief as practicable to address the issues). Herrera's sole issue is overruled.

## Conclusion

We affirm the judgment of the trial court.

/Craig Smith/

CRAIG SMITH
JUSTICE

220384F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FERNANDO HERRERA, Appellant

No. 05-22-00384-CV      V.

DALLAS INDEPENDENT
SCHOOL DISTRICT, Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-07866.
Opinion delivered by Justice Smith.
Justices Partida-Kipness and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DALLAS INDEPENDENT SCHOOL DISTRICT recover its costs of this appeal from appellant FERNANDO HERRERA.

Judgment entered this 21st day of June 2023.