BAPTIST MEMORIAL HEALTHCARE SYSTEM, Appellant,

v.

Roger H. CASANOVA, Appellee.

No. 04–97–00756–CV.

Court of Appeals of Texas, San Antonio.

April 28, 1999.

Rehearing Overruled Aug. 17, 1999.

Robert E. Bettac, Robert A. Stevenson, Stephan B. Rogers, Jo Beth Eubanks, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, for appellant.

Kenneth W. Howell, John Gonzales & Associates, P.C., San Antonio, for appellee.

Before TOM RICKHOFF, Justice, SARAH B. DUNCAN, Justice and KAREN ANGELINI, Justice.

## OPINION

Opinion by: SARAH B. DUNCAN, Justice.

A jury found Baptist Healthcare Systems discharged Roger Casanova and discriminated against him because he filed a workers' compensation claim. The trial court rendered judgment on the jury's verdict, and Baptist appealed. We conclude there is no evidence supporting the jury's finding and therefore reverse the trial court's judgment and render judgment in Baptist's favor.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 1993, Baptist adopted a policy limiting employee leaves of absence to six months [1] and a "Workers' Compensation Light Duty Policy." To implement its light duty policy, Baptist's Risk Management Department issued a "Worker's Compensation Modified/Alternate Duty Procedure," the purpose of which was "[t]o return injured employees to productive work available within their given restrictions/limitations as outlined by their physician." Under this procedure, workers' compensation claimants were required to present a "physician's work status slip" to

---

1. Because Baptist's six-month leave of absence policy applied to all Baptist employees, we do not confront a policy that treats workers' compensation claimants less favorably than other employees, as the court did in *Trevino v. Corrections Corp. of America*, 850 S.W.2d 806, 808–09 (Tex.App.—El Paso 1993, writ denied).

their department head or supervisor, who was then charged with "attempt[ing] every effort to accommodate the employee with duties that comply with the employee's restriction/limitations." It is undisputed the light duty policy did not apply to employees who were not injured on the job.

After these policies were adopted, on February 4, 1994, Roger Casanova injured his lower back while working as a physical therapist aide at Baptist's downtown hospital. Thereafter, pursuant to Baptist's light duty policy and apparently at the instruction of his treating doctor, Dr. Rafael Parra, Casanova was placed on light duty, filling in for the department's secretaries, sitting with patients, and setting up for debridements. However, on April 4, 1994, Casanova fractured his right ankle while at work, and the doctor treating his ankle, Dr. Marvin R. Brown, declared Casanova medically unable to work. Casanova's off work status continued at least until June 29, 1994, when Dr. Brown stated Casanova was medically able to perform a light duty desk job so long as it did not entail prolonged standing (no more than one hour in eight), and no lifting, walking on uneven ground, stooping, climbing, or bending. If a light duty desk job meeting these restrictions was not available, Dr. Brown stated Casanova was to be off work until his next appointment. There is no evidence Dr. Parra concurred in Dr. Brown's release of Casanova to a light duty desk job. In any event, and for reasons disputed by the parties, Casanova did not receive a light duty desk job, and the light duty release was revoked approximately five weeks later, on August 3, 1994. Dr. Brown did not release Casanova for work until February 1995 and, so far as our record discloses, Dr. Parra has still not done so.

Baptist discharged Casanova in November 1994. It is undisputed Baptist's stated reason for the discharge was its six-months maximum leave of absence policy and, by November 1994, Casanova had been on workers' compensation leave for at least six months.[2] After his discharge, Casanova sued Baptist for violating section 451.001 of the Texas Workers' Compensation Act, which prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against an employee because the employee has ... filed a workers' compensation claim in good faith." TEX. LAB. CODE ANN. § 451.001(1) (Vernon 1996) ("the Anti–Retaliation Act"). Casanova alleged Baptist violated the Anti–Retaliation Act by discharging him because he filed a workers' compensation claim. Casanova also claimed Baptist discriminated against him by failing to implement Dr. Brown's June 29 light duty release for the same reason.

The jury found Baptist "discharge[d] or discriminate[d] against [Casanova] in violation of the Texas Workers' Compensation Act," and Casanova's "reasonable damages ... as a result of being discharged and/or discriminated against ... by Baptist" were $16,572 in past lost wages and employment benefits, $102,704 in future lost wages and employment benefits, and $5,000 in past mental anguish. The jury also found Baptist should pay Casanova $124,276 in exemplary damages because it "acted with actual malice in discharging and/or otherwise discriminating against [him] because he had filed a workers' compensation claim in good faith." The trial court rendered judgment on the jury's verdict, and Baptist appealed.

### RETALIATORY DISCHARGE

Baptist contends there is no evidence Casanova's discharge was not required by

---

2. Casanova contends there is no evidence establishing the date he was placed on workers' compensation leave of absence. We agree the evidence is conflicting. A start date of April 15, 1994 is indicated in Casanova's application for unemployment compensation, while a May 8, 1994 start date is inferentially indicat-

ed in Baptist's October 7, 1994 letter stating Casanova's leave would expire on November 9, 1994. Regardless of these conflicting start dates, however, the evidence conclusively establishes Casanova had been on workers' compensation leave for at least six months by the time he was discharged.

Baptist's uniformly-applied policy limiting employee leaves of absence to six months and it is therefore entitled to judgment on Casanova's retaliatory discharge claim. We agree.

### The Applicable Law and the Scope and Standard of Review

■ The parties agree "[a]n employee can recover damages for retaliatory discharge under the Workers' Compensation Act only if he proves that without his filing a workers' compensation claim, the discharge would not have occurred when it did." *Trico Techs. Corp. v. Montiel,* 949 S.W.2d 308, 312 (Tex.1997). But the parties disagree on the practical effect of this "but for" causation requirement in light of the scope and standard for legal sufficiency review.

When reviewing for legal sufficiency, we "consider only the evidence and inferences tending to support the [jury's] finding, disregarding all contrary evidence and inferences." *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Id.* Casanova thus argues we may not consider evidence establishing he was discharged for a legitimate reason because it is contrary to the jury's retaliation finding; therefore, "regardless of the [employer's] stated explanation for its action, evidence of retaliatory motive will support a finding that an employer violated the wrongful termination statute of the workers' compensation law." Baptist disagrees, contending evidence conclusively establishing "termination was consistent with a uniform absence control policy" entitles it to judgment in its favor as a matter of law regardless of whether there is circumstantial evidence of a retaliatory motive.

In support of their arguments, both parties rely upon *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312 (Tex. 1994) (per curiam). However, *Carrozza* was a summary judgment case in which Carrozza failed to produce competent sum-

mary judgment evidence to controvert his former employer's affidavits, which established he was discharged solely for violating a reasonable absence-control provision. *See id.* at 313–14. *Carrozza* thus does not decide the weight to be given an employee's circumstantial evidence of retaliatory motive when other evidence establishes his discharge was required by a uniformly-enforced absence control policy. But this issue is addressed in the supreme court's more recent opinion in *Cazarez,* as Baptist contends.

■ In *Cazarez,* the court held an employee suing for retaliatory discharge under the Anti–Retaliation Act must establish that "but for the employee's assertion of a compensation claim or other conduct protected by section 451.001," "termination would not have occurred when it did." *Cazarez,* 937 S.W.2d at 451. This required causal connection cannot be shown "[i]f an employee's termination is required by the uniform enforcement of a reasonable absentee policy." *Id.* Accordingly, when the uniform enforcement of a reasonable absentee policy is an employer's stated explanation for a discharge, we must employ the "no evidence" standard to determine whether there is some evidence the policy was not uniformly enforced or did not require discharge. *See id.*

### Causation

■ The undisputed evidence establishes Baptist adopted its policy limiting employee leaves of absence to six months before Casanova's leave began and he was discharged after he had been on leave of absence for at least six months. Therefore, since Casanova does not argue Baptist's policy was unreasonable, the dispositive issue in this aspect of Baptist's appeal is whether the record contains some evidence establishing Baptist did not apply its leave of absence policy uniformly.

Three of Casanova's witnesses testified Baptist did not apply its leave of absence policy uniformly. However, the testimony

of Monica Martinez, a former secretary in Baptist's Risk Management Department, and Luis Rodriguez, a former physical therapy aide, constitutes no more than their subjective beliefs and unsupported conclusions. We therefore disregard their testimony as incompetent. *See Cazarez,* 937 S.W.2d at 452; *Carrozza,* 876 S.W.2d at 314; *Urquidi v. Phelps Dodge Ref. Corp.,* 973 S.W.2d 400, 405 (Tex.App.—El Paso 1998, no pet.). For the same reason, we disregard the testimony of Baptist's witness Maricela Jackson, a former director of Baptist's Rehabilitation Services. We are left with the testimony of the two witnesses who attempted to support their conclusions with factual data—Pete Nieto, a former worker's compensation specialist in Baptist's Risk Management Department, who testified Baptist did not apply its leave of absence policy uniformly, and Monika Elder, Baptist's Human Resource Coordinator, who testified it did.

Nieto repeatedly testified, in a conclusory fashion, Baptist did not apply its leave of absence policy uniformly or to employees who were department heads or in administration, and he tried to support his assertions in two ways. First, Nieto relied upon statistics regarding employee leaves of absence in 1989–91. However, these statistics predate Baptist's policy limiting employee leaves of absence to six months and are therefore not probative of whether the policy was uniformly enforced. Nieto also tried to support his assertions with the names of three employees who had

taken non-workers' compensation leaves of absence. However, Nieto admitted he did not deal with non-workers' compensation leaves of absence; he did not provide any specific information regarding the leaves of absence taken by these employees; and Elder's uncontroverted testimony established that none of Nieto's examples was permitted a leave in excess of six months after Baptist's new policy became effective in July 1993.[3] Consequently, Nieto's testimony is not probative of whether Baptist did not uniformly apply its leave policy, and it must be disregarded. *See, e.g., Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex.1996).

Elder also supported her assertion that Baptist applied its leave of absence policy uniformly with two statistical studies. The first reviewed the 102 Baptist employees who began longer than six-month leaves of absence between the date Baptist's new policy became effective and December 31, 1995, the year after Casanova was discharged.[4] Of these 102 employees, seventy were workers' compensation claimants and thirty-two were not. Of the seventy workers' compensation claimants, five returned to work and the remaining sixty-five (93%) were discharged. Of the thirty-two non-workers' compensation claimants, two returned to work, and the remaining thirty (94%) were discharged. Elder also reviewed the turnover rate for employees who took less than six-month workers' compensation leaves of absence in 1994,

**3.** The three employees Nieto cited were Diane Schonhoff, a department head; Bob Crutcher, an administrative employee; and Maria Hernandez, a receptionist. However, Crutcher took only one three-month leave of absence from March 23 through June 13, 1994, following an off-the-job accident that required the amputation of his legs, and Schonhoff took only one three-month leave of absence from November 2, 1992, through February 4, 1993. Both Crutcher's and Schonhoff's leaves of absence thus began before Baptist's maximum six-month leave of absence policy took effect and lasted less than six months. Similarly irrelevant were the leaves of absence taken by Hernandez before Baptist's new leave policy became effective in July

1993. After Baptist's new policy became effective, Hernandez took one six-month family medical leave of absence. However, when Hernandez did not return to work at the expiration of six months, she, like Casanova and Rodriguez, was discharged.

**4.** Elder's analysis included only those employees who began leaves of absence after the new policy went into effect because Baptist did not apply the policy retroactively. Thus, for employees who were on leave when the policy became effective, the six months did not begin running until the date the employees received notice of the new policy by certified mail.

the year in which Casanova was discharged. In this study, Elder found the turnover rate for workers' compensation claimants was 21%, while the turnover rate for all Baptist employees during the same period of time was 32%.

We conclude there is no probative evidence that Baptist did not apply its leave of absence policy uniformly. Retaliatory discharge thus cannot sustain the trial court's judgment.

## DISCRIMINATION

■ Baptist next contends the jury's discrimination finding cannot support the trial court's judgment because there is no evidence establishing either that it discriminated against Casanova or that a light duty position meeting his work restrictions was available. We agree.

To establish his discrimination claim under the Anti–Retaliation Act, Casanova was required to prove Baptist would not have denied him a light duty position between June 29 and August 3, 1994 had he not filed a workers' compensation claim. *See Cazarez,* 937 S.W.2d at 450. However, it is undisputed Baptist would have denied Casanova a light duty position if he had not filed a workers' compensation claim because, absent an on-the-job injury and thus a workers' compensation claim, Baptist's light duty policy did not apply. There is thus no evidence in the record before us that any Baptist employee received a light duty position following a nonworkplace injury. *See Saenz v. Southern Union Gas Co.,* 916 S.W.2d 703, 705 (Tex.App.—El Paso 1996, writ denied) (employee's affidavit alleging employees injured off the job were accommodated while employees injured on the job were not would be an appropriate, although conclusory, allegation of discrimination under chapter 451 of the Texas Labor Code).

Casanova insists there is evidence supporting his discrimination claim because Pete Nieto testified Casanova's supervisor told Nieto she did not want Casanova to return to work because he had filed a workers' compensation claim and involved her in related commission hearings. We agree this evidence, if believed by the jury, would be probative of a negative attitude towards protected activities. We also agree this should perhaps be some evidence to support Casanova's discrimination claim. But we are bound by *Cazarez,* which requires Casanova to prove Baptist would not have denied him a light duty position from June 29 through August 3, 1994, had he not filed a workers' compensation claim. *See Cazarez,* 937 S.W.2d at 450 (trial court should instruct the jury "[a]n employer does not discriminate against an employee for [filing a workers' compensation claim], in good faith, ... unless the employer's action would not have occurred when it did had the [claim] not been made"). And, whatever Casanova's supervisor may have said, and however much we and the public policy of this State disapprove of such an attitude, the statements attributed to her by Nieto do not tend to establish Baptist would not have denied Casanova a light duty position from June 29 through August 3, 1994 had he not filed a workers' compensation claim since light duty did not apply absent an on-the-job injury. Since only workers' compensation claimants were eligible for light duty positions, there must have been some reason or reasons for denying Casanova a light duty position other than his filing and pursuit of a workers' compensation claim, as all witnesses other than Nieto testified. *See Texas Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 635 (Tex.1995) ("[A]n employer should not be liable for bad motives never acted upon. An employer who has sufficient sound reasons for discharging an employee should not incur liability merely for disliking the employee for reporting illegal conduct when that dislike played no part in the disputed personnel action."). We therefore conclude there is no probative evidence establishing Baptist would not have denied Casanova a light duty position "but for" his filing and pursuit of a workers' compensa-

tion claim. *See Cazarez,* 937 S.W.2d at 451.

Moreover, while there is evidence establishing Casanova could have performed discrete job *duties* between June 29 and August 3, 1994, there is no evidence Dr. Parra concurred in Dr. Brown's release of Casanova to a light duty desk job, nor is there any evidence that any *position* meeting Casanova's work restrictions was then available. Indeed, Casanova admitted he could not perform the duties of his position as a physical therapy aide, and the uncontroverted evidence establishes there was no light duty position meeting his work restrictions available within the physical therapy department and none was feasible, and his supervisor was not aware of any light duty position meeting his work restrictions outside her department. *See Piper v. Kimberly–Clark Corp.,* 970 F.Supp. 566, 575 (E.D.Tex.1997) (summary judgment in favor of employer because employee failed to rebut employer's evidence that no jobs meeting employee's work restrictions were available and employee failed to produce evidence her work restrictions did not entail essential function of her previous job or that there was an available job she could perform within her work restrictions), *aff'd,* 157 F.3d 903 (5th Cir.1998) (unpublished table decision).

For these reasons, we conclude the jury's discrimination finding cannot support the trial court's judgment.

CONCLUSION

Because the record does not contain any competent, probative evidence supporting the jury's finding that Baptist discharged or otherwise discriminated against Casanova because he filed and pursued a workers' compensation claim, we reverse the trial court's judgment and render judgment in its favor.