Opinion Issued June 10, 2004 
















     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00502-CV




SYLVESTER MCFARLAND, Appellant

V.

GOODMAN MANUFACTURING COMPANY, L.P., Appellee




On Appeal from the Civil Court at Law Number Three
Harris County, Texas
Trial Court Cause No. 764,800




MEMORANDUM OPINION

          This is an appeal of a summary judgment rendered in favor of
appellee/defendant/employer, Goodman Manufacturing Company (Goodman), in a
workers’ compensation retaliatory discharge suit brought by
appellant/plaintiff/employee Sylvester McFarland. See Tex. Lab. Code Ann.
§ 451.001 (Vernon 1996). In two issues, McFarland contends that the trial court
erred in rendering summary judgment in favor of Goodman because (1) there was
more than a scintilla of evidence establishing (a) a causal link between his
termination and his workers’ compensation claim and (b) Goodman’s retaliatory
motive in discharging him; and (2) there was evidence of malice. We affirm. 
Facts
Goodman is a Houston-based company that manufactures air conditioners and
heaters. McFarland started working for Goodman on July 14, 1999 as a production
worker in the assembly department at one of Goodman’s manufacturing plants. 
          On July 28, 2000, McFarland sustained an on-the-job injury. Jose Alcaraz,
McFarland’s supervisor, filled out a report and released McFarland to go to the
emergency room. McFarland was released from the emergency room with
instructions to be placed on light duty. The next day, he returned to work and spoke
with a human resources employee, Kristi Kwiatkowski, who told him to go home
because of his injury. McFarland then went to the company doctor who immediately
placed him on a physical therapy regimen. 
          After a week-long company-wide vacation, McFarland returned to work on
August 7, 2000. On August 14, 2000, he went to his own doctor, Dr. Patel, who
placed him on full restriction and no work. From August 14, 2000, through January
12, 2001, McFarland was on workers’ compensation leave receiving medical
treatment. After his Family Medical Leave Act (FMLA) leave expired, he was
granted a leave of absence under Goodman’s Medical Leave of Absence Policy for
employees who have exceeded their FMLA allotment. The Policy provides that if an
employee is released to return to work, “the Company will then attempt to return you
to work if there is an open position, which you would be qualified to perform.”
(Emphasis in original.) Otherwise, “the employee will be continued on the Company
records as an active employee until such an alternate job becomes available up to a
maximum of six (6) calendar months from the start of the leave.” However, “In the
event an employee of the Company is away from work, whether because of personal
reasons, medical leave of absence, or any other reason, for a continuous period of six
(6) months, the employee’s employment with the company will be terminated.”
(Emphasis in original). 
          Dr. Patel released McFarland to return to work on January 12, 2001, after the
expiration of the twelve-week period provided under Goodman’s FMLA leave policy. 
McFarland faxed the release to Pat Alcorn, the human resources employee in charge
of workers’ compensation matters. When McFarland spoke with Alcorn, she
informed him that there were no open positions for him, but that she would put him
on a waiting list and that he should temporarily file for unemployment benefits. 
McFarland subsequently filed for and received unemployment benefits. In his
affidavit, Cliff Reilly, Vice President of Human Resources for Goodman, explained
that, although McFarland was released to return to work in January 2001, between
January 2001 and May 3, 2001, there were no open positions to offer McFarland;
“Indeed, there were no open positions well before and well after these dates and
Goodman did not hire any hourly manufacturing employees between September 2000
and August 2001.” 
          On May 3, 2001, Reilly terminated McFarland based on Goodman’s Medical
Leave of Absence Policy because McFarland had been absent from work for over six
months. McFarland’s original FMLA leave thus began in July 2000; his leave for
employees who exceeded their FMLA allotment began in October 2000; he was
released to return to work in January 2001, but no position was found for him; and
he was discharged by Goodman in May 2001. 
          McFarland sued Goodman, alleging that Goodman discharged him in
retaliation for filing a workers’ compensation claim in violation of section 451.001
of the Texas Labor Code. McFarland also alleged that because the retaliation was
motivated by malice, he was entitled to exemplary damages. 
          According to Goodman, McFarland received the maximum 12 weeks of leave
provided under Goodman’s FMLA policy and was terminated in accordance with
uniformly applied company policy. Goodman denied McFarland’s allegations and
moved for a no-evidence as well as a traditional summary judgment, claiming that
McFarland (1) could not establish a prima facie case of retaliation and (2) could not
produce evidence of a genuine issue of material fact to controvert Goodman’s
legitimate, nondiscriminatory reason for McFarland’s discharge—that his discharge
was based on a neutral application of its Medical Leave of Absence Policy. In
support of its motion for summary judgment, Goodman attached Reilly’s affidavit,
along with five exhibits: (1) a termination letter from Reilly to McFarland explaining
that his termination was based on his absence from work for a continuous period of
six months in violation of Goodman’s Leave of Absence Policy; (2) a Payroll Action
Request form terminating McFarland with the notations “Termination–Change in
Nature of Job” and leave of absence over six months; (3) a Work Separation Details
form indicating that McFarland “was released to regular duty and no regular position
was available”; (4) two portions of Goodman’s Medical Leave of Absence Policy;
and (5) McFarland’s deposition. 
          In response to Goodman’s motion for summary judgment, McFarland argued
that there were fact issues to be resolved which would establish whether there was
workers’ compensation retaliation. McFarland claimed that he was ready and able
to return to work within the six-month period, but that he was terminated when he
attempted to return because there were no positions available and that he was also
terminated on the basis of Goodman’s neutral absence control policy. In support of
his response, McFarland attached his own affidavit along with six exhibits: (1) the
Payroll Action Request form; (2) the Work Separation Details Form; (3) his
deposition; (4) Goodman’s response to his first request for admissions; (5) the
deposition testimony of Andrew Little, a former Goodman employee; and (6) the
deposition testimony of Gerald Lee Pierce, Goodman’s employee relations manager. 
          On March 26, 2003, the trial court granted Goodman’s summary judgment and
rendered a take-nothing judgment against McFarland. 
 
Standard of Review 
 
          The standard of review for a traditional summary judgment is well established:
(1) the movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and is entitled to summary judgment as a matter of law;
(2) in deciding whether there is a disputed material fact issue precluding summary 
judgment, evidence favorable to the non-movant will be taken as true; and (3) every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).
          For a defendant to prevail on summary judgment, it must either show that there
is no genuine issue of material fact concerning one or more essential elements of the
plaintiff’s cause of action or establish each element of an affirmative defense as a
matter of law. Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990). If
the defendant disproves an element of the plaintiff’s cause of action as a matter of
law, summary judgment is appropriate. Friendswood Dev. Co. v. McDade & Co., 926
S.W.2d 280, 282 (Tex. 1996). When necessary to establish a fact issue, the non-movant must present summary judgment evidence. Westland Oil Dev. Corp. v. Gulf
Oil Corp., 637 S.W.2d 903, 907 (Tex. 1982). When the summary judgment order
does not state the specific grounds on which it was granted, the non-movant must
show on appeal that no ground alleged in the motion is sufficient to support the
granting of the summary judgment. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989).  
          We review the granting of a no-evidence summary judgment in the light most
favorable to the nonmovant, and disregard all contrary evidence and inferences. See
Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,  994 S.W.2d 830,
834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). A party may move for a no-evidence summary judgment without presenting evidence, after adequate time for
discovery, on the ground that there is no evidence of one or more of the essential
elements of a claim on which the adverse party has the burden of proof. Tex. R. Civ.
P. 166a(i). Unless the nonmovant produces summary judgment evidence raising a
genuine issue of material fact, the court must grant the summary judgment motion. 
Id. More than a scintilla of evidence exists if the evidence is such that reasonable and
fair-minded people could differ in their conclusions. Merrell Dow Pharms. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
Retaliatory Discharge 
          In his first issue, McFarland contends that he was discharged by Goodman in
violation of section 451.001 of the Texas Labor Code for having filed a workers’
compensation claim.
Standard of Proof 
          Section 451.001 of the Texas Labor Code is a statutory exception to the Texas
common law doctrine of employment-at-will. Terry v. Southern Floral Co., 927
S.W.2d 254, 256 (Tex. App.—Houston [1st Dist.] 1996, no writ). The purpose of the
statute is “to protect persons who are entitled to benefits under the Worker’s [sic] 
Compensation Law and to prevent them from being discharged by reason of taking
steps to collect such benefits.” Carnation Co. v. Borner, 610 S.W.2d 450, 453 (Tex.
1980). The statute provides that:
A person may not discharge or in any other manner
discriminate against an employee because the employee
has:
(1) filed a workers’ compensation claim in good faith;
(2) hired a lawyer to represent the employee in a claim;
(3) instituted or caused to be instituted in good faith a
proceeding under Subtitle A; or 
(4) testified or is about to testify in a proceeding under
Subtitle A.
 
Tex. Lab. Code Ann. § 451.001. Unless one of the four specific circumstances
enumerated in the statute motivated the employer to discharge the employee, that
employee cannot prevail on a claim based on this article. Terry, 927 S.W.2d at 257.
          To establish a cause of action under section 451.001, the plaintiff must
establish a prima facie case by demonstrating that (1) he filed a claim for workers’
compensation benefits; (2) he suffered an adverse employment action; and (3) there
exists a “causal” link between the adverse employment action and the protected
activity. Id.
          Establishing a causal connection is an element of the employee’s prima facie
case. Id. The employee need not prove that the compensation claim was the sole
cause of the termination; he merely has to show that it contributed to the employer’s
decision to terminate him. Investment Properties Management, Inc. v. Montes, 821
S.W.2d 691, 694 (Tex. App.—El Paso 1991, no writ). The employee’s protected
conduct must be such that, without it, the employer’s prohibited conduct would not
have occurred when it did. Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 450 (Tex. 1996). The causal connection may be established by direct or
circumstantial evidence. Terry, 927 S.W.2d at 257. Examples of circumstantial
evidence sufficient to establish a causal link between termination and filing a
compensation claim include: (1) knowledge of the compensation claim by those
making the decision on termination; (2) expression of a negative attitude toward the
employee’s injured condition; (3) failure to adhere to established company policies;
(4) discriminatory treatment in comparison to similarly situated employees; and (5)
evidence that the stated reason for the discharge was false. Continental Coffee, 937
S.W.2d at 451 (citing Continental Coffee Prods. Co. v. Cazarez, 903 S.W.2d 70, 77-78 (Tex. App.—Houston [14th Dist.] 1995)). 
          Texas courts recognize that establishing the causal link is impossible if the
employer’s uniform enforcement of a reasonable absence control policy requires
termination. Baptist Memorial Healthcare v. Casanova, 2 S.W.3d 306, 309 (Tex.
App.—San Antonio 1999, pet. denied). If the employer’s absence control policy
requires termination, and the employee fails to demonstrate that the policy was not
uniformly enforced or did not require termination, the employer is entitled to
judgment as a matter of law. Id. If, however, the causal connection link is
established, the burden then shifts to the employer to rebut the alleged discrimination
by showing that there was a legitimate, nondiscriminatory reason for the discharge. 
Terry, 927 S.W.2d at 257. Thereafter, to survive a motion for summary judgment,
the burden shifts back to the employee to produce controverting evidence of a
retaliatory motive. See Texas Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312,
313 (Tex. 1994). 
          “Uniform enforcement of a reasonable absence-control policy. . . does not
constitute retaliatory discharge.” Texas Division-Tranter, 876 S.W.2d at 313. If an
employee’s termination is required because of violation of a uniformly enforced
absence control policy, the termination cannot have occurred because of the filing of
a worker’s compensation claim. Continental Coffee, 937 S.W.2d at 451. 
Causal Connection 
          McFarland contends that there is more than a scintilla of evidence to establish
a causal link between his workers’ compensation claim and his subsequent
termination by Goodman. In response, Goodman contends that the evidence does not
establish a causal link between McFarland’s workers’ compensation claim and his
termination and that, in the alternative, McFarland failed to rebut its legitimate,
nondiscriminatory reason for his termination. 
          McFarland asserts that there was evidence of three of the five factors that
establish a causal connection between filing a workers’ compensation claim and
retaliatory discharge: (1) knowledge of his workers’ compensation claim by those
making the decision on termination; (2) expression of a negative attitude towards his 
injury; and (3) evidence that the stated reason for discharge (adherence to established
policies) was false. We must, therefore, determine whether any evidence presented
by McFarland raises a genuine issue of material fact on the question of whether, but
for his filing of a worker’s compensation claim, Goodman would not have terminated
McFarland when it did. See Continental Coffee, 937 S.W.2d at 450-51. 
          Knowledge of the Claim
          The record includes the deposition of McFarland, who testified that Goodman
itself filed the workers’ compensation claim on his behalf. There is also evidence in
the affidavit of Reilly, the Vice President for Human Resources who terminated
McFarland directly, that he was aware of the compensation claim. However,
knowledge of the claim alone is insufficient. See Garcia v. Allen, 28 S.W.3d 587,
601 (Tex. App.—Corpus Christi 2000, pet. denied). It merely places the plaintiff
within the protected class and must be considered with the remaining evidence. Id. 
          Negative Attitude
          McFarland asserts that Jose Alcaraz, his supervisor, expressed a negative
attitude towards him after he sustained his injury and before his doctor placed him on
a no-work restriction. He argues that, after he returned to work, Alcaraz told him,
“Fall asleep, you get fired,” and that Alcaraz no longer dealt with him as a friend. 
However, allegations of this nature are considered “stray remarks” and are not
competent summary judgment evidence. See M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 25 (Tex. 2000) (stray remarks not made by anyone directly
connected with decisions are not enough to raise fact question about whether
employer’s reason for terminating employee was pretextual). Furthermore, there is
no evidence that Alcaraz had anything to do with the decision to discharge
McFarland. Both the Reilly and McFarland depositions indicate that McFarland was
discharged by Reilly. 
          False Reason For Discharge 
          Finally, McFarland contends that Goodman’s stated reason for terminating
him—the uniform application of a neutral absence control policy—was false. Under
Goodman’s Medical Leave of Absence Policy, once an employee has exceeded his
FLMA leave, Goodman’s absence control policy becomes effective. Under that
policy, if an employee is released to return to work within six months from the start
of the leave, “the Company will then attempt to return [the employee] to work if there
is an open position”; once an employee has been absent for a continuous period of six
months, for whatever reason, the employee’s employment will be terminated. 
(Emphasis in original). 
          McFarland does not contest that aspect of Goodman’s policy which provides
that, after six months of continuous absence, an employee will be automatically
terminated. Rather, McFarland contends that he was not terminated as a result of the
uniform application of the policy because (1) there is evidence that Goodman had
open positions when he attempted to return to work within the six month period but
that Goodman did not attempt to return him to work, in violation of the policy, and
(2) a jury could infer that he was terminated in January 2001, prior to the expiration
of six months of continuous absence. 
          In regard to his contention that Goodman’s reason for his discharge was false,
McFarland notes that within the six month period, when he attempted to return to
work, there were open positions that he should have been offered. In support of his
contention, McFarland relies on the testimony of Little, a former Goodman employee
who ended work at Goodman in April 2001, to establish that there were openings on
the assembly line at Goodman’s manufacturing plant. Little testified that there were
openings from early February through April 2001, including “ screw gun operators,
coil tables, operators, anything . . . .” Little knew about the openings “because [he]
was a supervisor, and [he] knew about what was going on the other lines.” 
McFarland also testified, based on his own observations, that five to six people on his
shift would quit each month and that he could have performed any job on the
assembly line. However, Little testified that the positions that were open were
probably not filled by other employees, but were left open, and Goodman established 
that no workers were hired to fill McFarland’s position between July 2000 and May
2001. 
          Although McFarland presents some evidence that Goodman had openings, he
has presented no evidence that Goodman did not attempt to place McFarland in an
open position, as its policy required, or that it treated him differently from other
employees in the same position. Rather, the summary judgment evidence establishes
that Goodman placed McFarland on a waiting list for openings, and that Goodman
was not hiring to fill McFarland’s prior position. 
          McFarland’s reliance on Acme Boot Company v. Montenegro, 862 S.W.2d 806,
809 (Tex. App.—El Paso 1993, no writ) is misplaced. Acme Boot stands for the
proposition that termination of a workers’ compensation claimant for the stated
reason that no positions are open, when the evidence indicates otherwise, is proof that
the reason for discharge is false. Id. In Acme Boot, while the employee remained on
leave of absence, supposedly because there were no open positions, the evidence
established that the employer, Acme Boot, had actually hired 49 new employees for
positions that the employee could have filled. Id. at 808. Therefore, the employee’s
stated defense, that there were no openings, was false and established a prima facie
case of retaliation. Id. at 809. Here, however, there is no evidence that Goodman
hired any new employees to fill any openings. Therefore, no evidence indicates that
Goodman’s claim that there were no open positions for McFarland to fill was false. 
          In regard to his contention that a jury could infer that he was terminated in
January 2001, McFarland notes that, when he returned from leave in January 2001,
Alcorn told him that there were no positions open, that he would be placed on a
waiting list, and that he should go ahead and file for unemployment benefits. Based
on these facts, McFarland asserts that he felt that his employment was terminated at
that time. However, the facts that there were no open positions at that time, that
McFarland was placed on a waiting list for open positions, and that he was
temporarily eligible for unemployment benefits do not suggest a reasonable inference
that he was fired. Rather, the evidence establishes that McFarland knew of
Goodman’s policies and understood that he would return to work if there was an open
position and that he would be automatically terminated only after an absence for a
continuous period of over six months. His employment was then terminated on May
3, 2001, with no opening having been found for him and no similar position having
been filled by Goodman between January and May. 
          We conclude that McFarland has failed to establish the existence of an issue
of material fact as to whether he was terminated for filing his workers’ compensation
claim. Accordingly, the trial court did not err in granting Goodman’s motion for
summary judgment on McFarland’s retaliatory discharge claim. 
          We overrule McFarland’s first issue. 
Malice 
          In his second issue, McFarland contends the trial court erred in rendering
summary judgment for Goodman because there is a genuine issue of material fact as
to whether Goodman acted with malice and, therefore, whether he should be allowed
to recover exemplary damages.
          An employee can recover punitive damages


 only if a court finds that the
employer engaged in an unlawful retaliatory practice with actual malice.


 Continental
Coffee, 937 S.W.2d at 454. Because we have determined Goodman was entitled to
judgment as a matter of law on McFarland’s retaliatory discharge claim, McFarland’s
second issue necessarily fails.
          Accordingly, we overrule McFarland’s second issue. 
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Keyes.