

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00137-CV

CITY OF DALLAS,

Appellant

v.

KATRINA AHRENS, S.A. AND M.A.,

Appellees

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. DC-C2017-00365

## MEMORANDUM OPINION

Appellee, Katrina Ahrens, added a claim against appellant, the City of Dallas (the

"City"), for retaliation under the Texas Whistleblower Act.[1]  *See* TEX. GOV'T CODE ANN.

§§ 554.001-.010.  The City responded by filing a motion to dismiss this claim under the

Texas Citizens Participation Act ("TCPA").  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§

---

[1] Although this lawsuit includes other claims brought on behalf of S.A. and M.A., Katrina's minor children, neither S.A. nor M.A. asserted a retaliation claim against the City of Dallas.  Thus, this appeal only involves the trial court's denial of the City of Dallas's TCPA motion to dismiss Katrina's claim against the City of Dallas for retaliation.

27.001-.010. After a hearing, the trial court denied the City's TCPA motion to dismiss. Because we conclude that the trial court did not err in denying the City's TCPA motion to dismiss, we affirm.

## Background

On July 7, 2016, four officers of the Dallas Police Department ("DPD") and one Dallas Area Rapid Transit officer were tragically killed by a sniper in downtown Dallas. Among the five officers killed was Katrina's husband, Senior Corporal Lorne Ahrens. After this incident, members of the public donated money intended for the families of the officers who were killed. Katrina contends that the vast majority of these gifts went to the Assist the Officer Foundation, Inc. ("ATO"), which is a non-profit entity operated by the Dallas Police Association.

Approximately two years after the sniper incident, Katrina and her family allegedly had not received any of the donations made through the ATO. Katrina has alleged that the ATO "has stolen and cashed checks" written to her personally, as well as "'lost' a substantial sum of the public's cash donations and is holding donations meant for [her] and her family hostage, refusing to transfer them to her unless she agrees to the ATO's conditions, like keeping quiet and releasing the ATO and its leaders from all liability."

Katrina, S.A., and M.A. filed suit against the Dallas Police Association, the ATO, Frederick Frazier, the City of Dallas, Zak Products II, LLC, Michael Mata, Bob Gorsky,

Lyon, Gorsky & Gilbert, LLP, and Ronald C. Devine, alleging a variety of causes of action. Pertinent to this appeal, Katrina subsequently added a cause of action against only the City of Dallas for retaliation under the Texas Whistleblower Act. Katrina, who is also an officer with the DPD, alleged that she made good-faith reports to an appropriate law-enforcement authority of violations of law pertaining to the aforementioned handling of donations by her employing governmental entity and various public employees. As a result of her reports, Katrina contends that she suffered adverse personnel actions that would not have occurred but for her reporting of the alleged misconduct and that she suffered various damages.

The City answered and filed a TCPA motion to dismiss. In the recitation of the facts in its TCPA motion, the City noted that Katrina worked as a detective in the sexual assault unit for approximately five years. According to the City's TCPA motion to dismiss, on October 9, 2018, the Chief of the Sexual Assault Unit of the Dallas County District Attorney's Office contacted Katrina's supervisor, Sergeant Jeramy Mills, to inform her that Katrina allegedly failed to reveal exculpatory information to the DA's Office in two cases filed with their office. As a result of this alleged failure to disclose, the DA's Office informed DPD that it can no longer support cases filed by Katrina. The City also referenced reported complaints from the DA's Office regarding Katrina's conduct in the grand-jury room and in the presentation of cases to the grand jury. As a result of the complaints from the DA's Office and allegedly at the request of the DA's

Office, DPD initiated an internal affairs investigation and placed Katrina on special assignment outside of the sexual assault unit while the investigation was pending.

Based on the foregoing facts, the City argued that the TCPA applies to the City's statements made by City officials and employees regarding Katrina's employment, that Katrina did not establish by clear and specific evidence a prima facie case for each element of her whistleblower claim, that the decision to investigate Katrina and the resulting statements made by the City came at the request of the DA's Office, and that her placement on special assignment was based on information, observation, and evidence unrelated to her reporting of an alleged violation of law. Katrina filed a response to the City's TCPA motion, and the City filed a reply to the response.

After a hearing, the trial court denied the City's TCPA motion in its entirety.

**The TCPA**

The TCPA protects persons who associate, petition, and speak on matters of public concern from legal actions that seek to intimidate or silence them. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 13 (Tex. 2018); *see also Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). Protection comes in the form of a special motion to dismiss, subject to expedited review, for any suit that appears to stifle a defendant's exercise of those rights. *See Youngkin*, 546 S.W.3d at 679; *In re Lipsky*, 460 S.W.3d at 584. The Texas Supreme Court has noted that the TCPA casts a wide net and is to be construed liberally to fully effectuate its purpose and intent. *Adams v. Starside*

*Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *see ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). When determining whether a plaintiff's legal action should be dismissed, a trial court considers the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *see Adams*, 547 S.W.3d at 892.

The TCPA establishes a multi-step process for the expedited dismissal of legal actions that are "based on, relate[] to, or [are] in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Initially, the party who files a motion to dismiss under the TCPA must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to" the movant's exercise of the above-enumerated protected rights. *Id.* § 27.005(b). If the movant meets that burden, then under the second step, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the non-movant fails to satisfy the burden to present a prima-facie case under section 27.005(c), the trial court must dismiss the action within the TCPA's expedited time frame. *See id.* § 27.005(c)-(d); *see also id.* §§ 27.003(b), .004, .005(a), .007(b), .008 (establishing deadlines). However, if the non-movant satisfies the burden to present a prima-face case, the movant may still obtain dismissal by establishing "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

On appeal, our review of the trial court's ruling on a TCPA motion to dismiss is de novo. *See Holcomb v. Waller County*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Tervita, LLC v. Satterfield*, 482 S.W.3d 280, 282 (Tex. App.—Dallas 2015, pet. denied); *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied); *see also Arey v. Shipman Agency, Inc.*, No. 10-18-00100-CV, 2019 Tex. App. LEXIS 3513, at *3 (Tex. App.—Waco May 1, 2019, pet. denied) (mem. op.).

In five issues, the City contends that the trial court erred by denying the City's TCPA motion to dismiss. In its second issue, the City argues that the TCPA protects the government and governmental officials that speak on matters of public concern. In response, Katrina contends that the Legislature did not intend for governmental entities, such as the City, to have the right to file a TCPA motion to dismiss, focusing on amendments that were made to the TCPA in 2019.

First, we recognize that several changes were made to the TCPA in 2019. As relevant to this case, section 27.003 of the Texas Civil Practice and Remedies Code was amended to exclude governmental entities from filing TCPA motions to dismiss. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 2, 2019 Tex. Gen Laws 684, 685 (amending TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) to state that "[a] party under this section does not include a government entity, agency, or an official or employee acting in an official capacity"). However, this exclusion did not exist in the version of the TCPA that applied at the time this claim was filed. *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 2.

Nevertheless, Katrina argues that this 2019 amendment to the TCPA was actually a clarification that should be applied to this lawsuit.

The language of section 11 of House Bill 2730, which is the bill that Katrina relies on when arguing that the governmental entities are precluded from filing a TCPA motion to dismiss, belies her contention. Specifically, section 11 of House Bill 2730 states:

> *Chapter 27, Civil Practice and Remedies Code, as amended by this Act, applies only to an action filed on or after the effective date of this Act.* An action filed before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose.

Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687 (emphasis added). In addition to the clear expression of the Legislature's intent in section 11 of House Bill 2730, it is also true that: "When the Legislature amends a law it is presumed that the intention was to change the law." *Johnson v. McDaniel*, 461 S.W.2d 198, 201 (Tex. Civ. App.—Eastland 1970, writ ref'd n.r.e.).

And finally, we note that the Texas Supreme Court and other intermediate appellate courts have concluded that there is no basis for the exclusion of the government and government employees from the protections of the former version of the TCPA based on the plain language of the former TCPA. *See Harper*, 562 S.W.3d at 12 (concluding that a removal action is not an "enforcement action" and that TCPA is available to a public official because removal action is a legal action); *see also Roach v. Ingram*, 557 S.W.3d 203, 218-20 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding that "the TCPA's plain language does not preclude its application to government officials sued in their

official capacity"); *Hesse v. Howell*, 07-16-00453-CV, 2018 Tex. App. LEXIS 4127, at *10 (Tex. App.—Amarillo June 7, 2018, pet. denied) (mem. op.) (concluding that a lawsuit against a prosecutor is not exempt from the TCPA because the lawsuit was not an enforcement action). Accordingly, we conclude that the protections of the former TCPA extended to government and governmental officials sued in their official capacity who speak on matters of public concern. As such, we sustain the City's second issue.

**STEP ONE**

Next, we address the City's first, third, fourth, and fifth issues, which pertain to the application of the TCPA. In the first step of the TCPA, we must determine whether Katrina's lawsuit was based on, related to, or in response to the City's exercise of its right of free speech, right to petition, or right of association. In conducting our de novo review of this step, we consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based, as the trial court was required to consider. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Adams*, 547 S.W.3d at 892; *Johnson-Todd*, 480 S.W.3d at 609. When it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

With regard to the phrase "based on, relates to, or is in response to," we consider whether there is a nexus between the "legal action" and the protected conduct under the TCPA. *See Grant v. Pivot Tech. Solutions, Inc.*, 556 S.W.3d 865, 879 (Tex. App.—Austin

2018, pet. denied). The level of nexus required, which "includes no qualifications as to its limits," is very broad. *Id.* at 880 (quoting *Cavin v. Abbott*, 545 S.W.3d 47, 53 (Tex. App.—Austin 2017, no pet.); *see Coleman*, 512 S.W.3d at 901. "[A] plaintiff's claims are 'related' to a protected communication when there is 'some sort of connection, reference, or relationship between them,' and are 'in response to' a protected communication when they 'react[] to or [are] asserted subsequently' to the communication." *Grant*, 556 S.W.3d at 880 (quoting *Cavin*, 545 S.W.3d at 69).

A broad range of communications, in various mediums, are covered by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (defining "communication" to include the "making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"); *see also Adams*, 547 S.W.3d at 894 (recognizing that, under the TCPA, "[a]lmost every imaginable form of communication, in any medium, is covered"). Moreover, private communications are covered by the TCPA provided that they were made in connection with a matter of "public concern." *See Coleman*, 512 S.W.3d at 901; *see also Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (noting that the "plain language of the statute imposes no requirement that the form of the communication be public").

Here, it is undisputed that Katrina sued the City for retaliation under the Texas Whistleblower Act. In her fifth amended petition, Katrina characterized the City's alleged retaliation as follows:

52. Det. Ahrens is [a] long-serving officer with the DPD. After she became aware of what she reasonably believed to be the unethical and unlawful activity described in extensive detail above, she reported the activity to appropriate law-enforcement authorities, including her DPD chain of command, the City Manager, and City Attorney's Office.

53. But rather than thank her for her reporting, the City has taken adverse personnel actions against her, and it would have not done so but for her disclosure of the City's and other Defendants' misconduct.

54. The City has discriminated against Det. Ahrens in comparison to similarly situated employees and has stated reasons for its adverse employment actions against her that are false. For example, the DPD has commenced an investigation into Det. Ahrens' decision not to expressly note in a particular prostitution report that a sexual assault claimant had a history of prostitution. Yet, having worked as a detective investigating sexual assaults for many years, she did not emphasize the victim's prostitution history in accordance with her and her unit's well-established practice. The DPD used the pending investigation as an excuse to remove Det. Ahrens from the detective role she has served in for years. In doing so, Det. Ahrens was told by supervisors that she had to be removed from her detective role pending the outcome of the investigation. But that stated excuse is false—numerous other DPD officers having similar open investigations continue to act as detectives.

55. Worse, after removing Det. Ahrens from her detective role, the City reassigned her to a position training other police officers in responding to "active shooter" scenarios. The City's decision is outrageous: Det. Ahrens' husband was murdered by an "active shooter"; her husband was himself a City employee; and her children with her murdered husband know their father was murdered by an "active shooter." Yet, among the many positions the City could have put Det. Ahrens in—assuming its decision to do so had not itself constituted unlawful retaliation—it chose the one that would force her to face her husband's death over and over again, on a daily basis.

56. In further contrast to the City's treatment of Det. Ahrens, the City has essentially ignored its own and Defendants Frazier and Mata's misconduct. The City's retaliation against Det. Ahrens and her children is part of coordinated efforts to compel her to cease enforcing their rights.

57. Within 10 business days after Det. Ahrens learned that the City had taken adverse personnel actions against her, she initiated a grievance in accordance with the City's rules. To Det. Ahrens' knowledge, the City has not made any effort to rectify its retaliation against her. Indeed, the City unlawfully took additional adverse employment action against her immediately after she initiated a grievance under the City's rules.

Further, in her response to the City's TCPA motion to dismiss, Katrina attached an affidavit wherein she explained that:

On October 22, 2018, while I was still serving as a detective in CAP [Crimes Against Persons], I attended a meeting with Sgt. Mills, Lt. Patricia Mora, who was Sgt. Mills's immediate supervisor at that time, and Thomas Castro, who was and is serving as the Deputy Chief for the Criminal Investigations Division for the DPD at the time. During that October 22, 2018 meeting, Chief Castro alleged that the Dallas County District Attorney's Office ("DA's Office") going forward was "not going to support your testimony," allegedly because I did not disclose exculpatory evidence to the DA Office in two particular sexual assault causes that I recommended be filed. I was further told that an IAD investigation was being opened to investigate my handling of those two cases, and that during the pendency of that IAD investigation, I was being temporarily removed from my detective position in CAP and reassigned to a non-detective position in a different unit. I was told that I could not stay in a detective position because the DA's Office would not support my testimony.

Katrina then explained that she objected to the reassignment and that she eventually filed a grievance and requested a hearing. According to Katrina, after filing the grievance, DPD permanently reassigned her to the Reality Based Training unit at the DPD's Police Academy, which involved training DPD recruits on active-shooter situations.

The record evidence demonstrates that Katrina's retaliation claims are "based on, relate[d] to, or [are] in response to" communications made by the City that implicate the

City's exercise of the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (providing that the "[e]xercise of the right of free speech" means a communication made in connection with a matter of public concern); *Cavin*, 545 S.W.3d at 69 (concluding that the plaintiff's claims "relate to" the defendants' "exercise of the right of free speech" because "there is some sort of connection, reference, or relationship" between the claims and the exercise of the right of free speech). Specifically, the evidence shows communications between the City, the Dallas County DA's Office, Katrina, and Katrina's supervisor regarding Katrina's alleged failure to turn over exculpatory *Brady* evidence in two sexual-assault cases Ahrens was investigating. Furthermore, Katrina's claims are factually predicated on her allegation that the City's statements for re-assigning her work duties were false and that she was re-assigned in retaliation for reporting alleged misconduct regarding the ATO fund. We conclude that the evidence Katrina relies upon demonstrates that statements were made by the City with regard to her job performance and, thus, satisfies the broad meaning of "communication." *See Youngkin*, 546 S.W.3d at 680; *see also Fla. Metal Prods. v. Kreder*, 2020 Tex. App. LEXIS 8163, at **7-8 (Tex. App.—Waco Oct. 14, 2020, no pet.) (mem. op.) (concluding that alleged false statements about job performance and a derogatory comment about plaintiff's injury were made with regard to plaintiff's job performance and future employment status with the company and, thus, satisfied the broad meaning of "communication").

Despite the foregoing, for the TCPA to apply, the communications must involve a matter of public concern because the communications made in this case were private. *See Coleman*, 512 S.W.3d at 901; *see also Lippincott*, 462 S.W.3d at 509. In *Coleman*, the Texas Supreme Court stated,

> [t]he TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same; rather, TCPA applicability requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature.

*Coleman*, 512 S.W.3d at 900 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3), (7)).

The communications at issue relate to the job performance of a detective, the accuracy of information contained in police reports, the integrity of criminal investigations, the rights of criminal defendants to exculpatory information revealed in an investigation, and the conduct of a DPD detective in criminal investigations and criminal proceedings. Stated simply, the communications at issue involve matters of safety, community well-being, the government, and a public official, which are covered by the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7) (noting that a "[m]atter of public concern" includes issues related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace). Moreover, the United States Supreme Court and other courts have held that matters relating to the reporting of crimes and related proceedings, as well as the activities of government officials and law-enforcement

City of Dallas v. Ahrens, et al.                                                                 Page 13

personnel, are matters of public concern. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 1045, 43 L. Ed. 328 (1975) ("The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government."); *Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir. 1988) (holding that alleged misconduct by public officials, particularly law-enforcement officials, is a matter of public concern); *Adams*, 547 S.W.3d at 896, 898 (holding that the appellate court erred concluding that defendants failed to meet their step one TCPA burden, in part, because plaintiff's allegation that a developer and HOA repeatedly violated the law and engaged in corrupt or criminal activity is a matter of public concern); *see also Opaltz v. Gannaway Web Holdings, LLC*, 454 S.W.3d 61, 66 (Tex. App.—Amarillo 2014, pet. denied) (explaining that because of public trust placed in law-enforcement officials, the public has interest in information concerning an officer's fitness for duty); *Pardo v. Simons*, 148 S.W.3d 181, 189 (Tex. App.—Waco 2004, no pet.) (holding that a police officer is a public official). We therefore hold that the first step is met. *See Hersh*, 526 S.W.3d at 467 (noting that when it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more). We now proceed to the second step in our analysis.

**STEP TWO**

In the second step, the burden shifts to Katrina to establish, by clear and specific evidence, a prima facie case for each element of the applicable claims alleged in the petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587. "Clear" means unambiguous, sure or free from doubt, and "specific" means explicit or relating to a particular named thing. *In re Lipsky*, 460 S.W.3d at 590. A prima facie case is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* To meet the standard for "clear and specific evidence," a plaintiff must provide enough detail to show the factual basis for its claim. *Id.* at 591. The TCPA does not require direct evidence of each essential element of the underlying claim to avoid dismissal. *Id.* However, conjecture, guess, or speculation cannot survive "clear and specific" scrutiny under the TCPA. *See Van der Linden v. Khan*, 535 S.W.3d 179, 195 (Tex. App.—Fort Worth 2017, pet. denied).

At the outset, we address the City's contention that sworn responses made by Katrina to interrogatories propounded by the City should not be considered because the responses are not affidavits or pleadings, as contemplated by Texas Rule of Civil Procedure 45. *See* TEX. R. CIV. P. 45. Section 27.006(a) of the Texas Civil Practice and Remedies Code provides that the trial court shall consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX.

CIV. PRAC. & REM. CODE ANN. § 27.006(a).  However, the complained-of sworn responses to the City's interrogatories were attached as "Exhibit C" to the City's TCPA motion to dismiss and were incorporated in Katrina's affidavit that was filed with her response to the City's TCPA motion to dismiss.  We cannot say Katrina's sworn responses were not properly before the trial court when determining the City's TCPA motion to dismiss.[2] *See Lane v. Phares*, 544 S.W.3d 881, 889 (Tex. App.—Fort Worth 2018, no pet.) (allowing a three-hour deposition of a TCPA movant); *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 797 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020) (allowing "limited discovery, including document production" and the deposition of one of the TCPA movants); *see also In re Spex Grp. US LLC*, 2018 Tex. App. LEXIS 1884, at **10-13 (Tex. App.—Dallas Mar. 14, 2018, no pet.) (mem. op.) ("Neither the TCPA nor Texas courts have defined the scope of 'specified and limited discovery relevant to the motion to dismiss.'  However, it has been determined that it is proper to allow the non-movant to depose the movant and obtain limited document production. . . .  Some merits-based discovery may also be relevant, however, to the extent it seeks information to assist the

---

[2] We note that the City propounded its interrogatories on Katrina on January 4, 2019, and Katrina provided sworn responses to the City's interrogatories on February 4, 2019.  The City then filed its TCPA motion to dismiss on February 8, 2019.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(c) ("Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss."); *see also id.* § 27.006(b) ("On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion.").

non-movant to meet its burden to present a prima facie case for each element of the non-movant's claims to defeat the motion to dismiss." (internal citations omitted).

As stated earlier, Katrina added a claim to her previously-filed suit for retaliation under the Texas Whistleblower Act. The Whistleblower Act prohibits a government employer from taking an adverse personnel action against a public employee who in good faith reports a violation of law to an appropriate law-enforcement authority. *See* TEX. GOV'T CODE ANN. § 554.002(a); *Office of Att'y Gen. v. Rodriguez*, 605 S.W.3d 183, 191 (Tex. 2020). However, the Whistleblower Act "does not afford unlimited protection from adverse personnel actions based on legitimate reasons." *See Rodriguez*, 605 S.W.3d at 192. Employers have the right to make employment decisions based on conduct that arises after an employee reports a legal violation. *Id.* at 192, 196. The Whistleblower Act also preserves an employer's right to terminate an employee "when it has 'sufficient sound reasons' or even 'harbor[s] bad motives never acted upon.'" *Id.* at 192 (quoting *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 635-36 (Tex. 1995) (alteration in original)).

To establish a claim under the Whistleblower Act, an employee must demonstrate that the employer took an adverse employment action because the employee made a report in good faith. *See id.*; *see also Hinds*, 904 S.W.2d at 633. The employee need not establish that her report was the sole or substantial reason for the employer's adverse action. *Rodriguez*, 605 S.W.3d at 192. Rather, the employee must present some evidence that "but for" the report, the adverse employment action would not have occurred when

it did.  *Id.* ("An adverse employment action 'based solely' on reasons unrelated to a good-faith report of a legal violation destroys the causal link."); *see City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 68 (Tex. 2000).

Moreover, while circumstantial evidence may be sufficient to establish the requisite causal link, such evidence must, at a minimum, show that the person who took the adverse employment action knew of the employee's report.  *Harris County v. Vernagallo*, 181 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *see Zimlich*, 29 S.W.3d at 70.  In other words, a "decision-maker could not fire an employee because of the employee's report of alleged illegal conduct if the decision-maker did not even know the employee made such a report."  *Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 238 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

With regard to circumstantial evidence of causation, the Texas Supreme Court has stated that a court must examine all of the circumstances, including knowledge of the report of illegal conduct, the temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly-situated employees, and evidence the employer's stated reason is false.  *Zimlich*, 29 S.W.3d at 69.

On appeal, Katrina contends that a letter sent by her counsel to the Dallas City Manager, the City Attorney's Office, and her DPD chain of command on December 7,

2017, is clear and specific evidence that Katrina, through her attorney, reported a violation of law to an appropriate law-enforcement authority. The City counters that: (1) the December 7, 2017 letter is not contained in the record; and (2) Katrina did not report a violation of law to an appropriate law-enforcement authority, as required by the Whistleblower Act.

Although the December 7, 2017 letter is not contained in the record, it is of no consequence. This is because we are to view the pleadings and evidence in a holistic manner and in the light most favorable to the non-movant. *See Adams*, 547 S.W.3d at 897. We note that the pleadings and Katrina's supporting affidavit recount in detail the alleged thefts and violations of the City Code. Furthermore, Katrina states in her live pleading, as well as her affidavit, that she reported the alleged thefts and violations of the City Code to the Dallas City Manager, the City Attorney's Office, and her DPD chain of command. The parties do not dispute that the DPD has authority to investigate and enforce criminal laws, and the evidence suggests that the City Manager has the authority to enforce municipal ordinances. Thus, Katrina has made a prima-facie showing of a violation of the law and a report to an appropriate law-enforcement authority. *See* TEX. GOV'T CODE ANN. § 554.002(b); *Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014); *Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 683-86 (Tex. 2013); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320-21 (Tex. 2002).

Next, the City contends that Katrina failed to introduce any evidence that Katrina suffered an adverse personnel action as a result of her purported Whistleblower report. In her live pleading, Katrina alleged that in response to Katrina's December 7, 2017 Whistleblower report, the City "discriminated" against her "in comparison to similarly situated employees and has stated reasons for its adverse employment actions against her that are false." They further allege that:

> DPD has commenced an investigation into Det. Ahrens' decision not to expressly note in a particular prosecution report that a sexual assault claimant had a history of prostitution. Yet, having worked as a detective investigating sexual assaults for many years, she did not emphasize the victim's prostitution history in accordance with her and her unit's well-established practice.

Allegedly, DPD used this investigation as an excuse to remove Katrina from her detective role pending the outcome of the investigation.

In her affidavit, Katrina provided more background regarding the aforementioned investigation. On October 22, 2018, approximately ten months after Katrina sent her December 7, 2017 Whistleblower report, Katrina attended a meeting with her immediate supervisor, Sergeant Jeramy Mills; Lieutenant Patricia Mora, who was Sergeant Mills's immediate supervisor at the time; and Thomas Castro, who served as the Deputy Chief for the Criminal Investigations Division for DPD at the time. At this meeting, Chief Castro stated that the Dallas County DA's Office was not going to support Katrina's testimony because of the alleged failure to disclose exculpatory evidence in two sexual assault cases Katrina recommended be filed. As a result of this, the Internal Affairs

City of Dallas v. Ahrens, et al. Page 20

Division initiated an investigation into Katrina's actions in those two sexual-assault cases, and Katrina was removed from her detective position.

Thereafter, as noted in her sworn interrogatory responses, on November 5, 2018, Katrina filed a grievance, alleging that the "City of Dallas has unlawfully retaliated against her for her prior reports of City of Dallas employee misconduct." Katrina sent her grievance to Mills, Mora, Charles Young, Castro, Nina Arias, Patsy Palmer, and Janet Melancon. After sending the grievance, Katrina allegedly was permanently reassigned to the Reality Based Training unit at the DPD's Police Academy, which involved training recruits on active-shooter situations and watching videos of police officers being shot and killed similarly to her husband.

Based on the foregoing, Katrina made a prima-facie showing that she suffered an adverse personnel action. *See* TEX. GOV'T CODE ANN. § 554.001(3) (defining "[p]ersonnel action" as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation"); *see also Montgomery County v. Park*, 246 S.W.3d 610, 612 (Tex. 2007) (noting that "for a personnel action to be adverse within the meaning of the Act, it must be material, and thus likely to deter a reasonable, similarly situated employee from reporting a violation of the law").

Also related to the foregoing analysis is the City's challenge to causation. To prove causation in a Whistleblower case, an employee need not prove that her reporting of the illegal conduct was the sole reason for the employer's adverse action. *Hinds*, 904 S.W.2d

at 634. Rather, to show causation, a public employee must demonstrate that after she reported a violation of law, in good faith, to an appropriate law-enforcement authority, the employee suffered discriminatory conduct by her employer that would not have occurred when it did had the report not been made. *Zimlich*, 29 S.W.3d at 67; *Hinds*, 904 S.W.2d at 634. This causation standard is known as the "but for" causal nexus requirement. *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 755 (Tex. App.—Fort Worth 2003, pet. denied).

In this case, Katrina made a prima-facie showing that DPD decision makers, including Mills, Castro, and Mora likely received, at a minimum, her November 5, 2018 grievance, which referenced her December 7, 2017 Whistleblower letter. *See Zimlich*, 29 S.W.3d at 70; *see also Perry*, 440 S.W.3d at 238; *Vernagallo*, 181 S.W.3d at 25. Further, Katrina noted that she was removed as a detective approximately ten months after her December 7, 2017 Whistleblower letter and that she was reassigned to the Reality-Based Training Unit shortly after making her November 5, 2018 grievance. Additionally, in her affidavit, Katrina described several other instances within her personal knowledge of DPD detectives that were not barred from detective positions pending the outcome of Internal Affairs investigations.

Given the above, we conclude that Katrina made a prima-facie showing of "but for" causation that she suffered discriminatory conduct by DPD that would not have occurred when it did had she not reported, in good faith, a violation of law to an

appropriate law-enforcement authority. *See Rodriguez*, 605 S.W.3d at 192; *Zimlich*, 29 S.W.3d at 68; *Hinds*, 904 S.W.2d at 635-36; *see also D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 440 & n.9 (Tex. 2017) (refusing to consider TCPA movant's rebuttal evidence in determining whether non-movant established a prima-facie case, stating that although movant "disputes [non-movant's factual assertion,] . . . at this stage of the proceedings we assume its truth.").

Finally, with regard to Step Two, the City argues that Katrina did not present any evidence concerning damages regarding her claims under the Whistleblower Act.

It was Katrina's burden to produce evidence from which a jury may reasonably infer that, but for the City's conduct, she would be awarded damages. *See, e.g., Winstead PC v. USA Lending Grp., Inc.*, NO. 12-20-00172-CV, 2021 Tex. App. LEXIS 2106, at *19 (Tex. App.—Tyler Mar. 21, 2021, no pet.) (citing *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 118-20 (Tex. 2004)). As noted above, in the TCPA context, we apply the "clear and specific evidence" requirement. *See In re Lipsky*, 460 S.W.3d at 587. This means that Katrina must provide enough detail to show the factual basis for her claim and provide enough evidence to support a rational inference that the allegation of fact is true. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

Section 554.003 of the Texas Government Code outlines relief available to public employees under the Whistleblower Act. TEX. GOV'T CODE ANN. § 554.003. Subsection (a) allows for injunctive relief, actual damages, court costs, and reasonable attorney's fees.

*Id.* § 554.003(a). Subsection (b) entitles a successful claimant under the Whistleblower Act to reinstatement to the employee's former position or an equivalent position, lost wages, and reinstatement of fringe benefits and seniority rights lost. *Id.* § 554.003(b).

In her sworn interrogatory responses, Katrina alleged the following:

> Det. Ahrens seeks actual damages, including . . . front pay, fringe benefits, injunctive relief pursuant to Tex. Gov't Code § 554.003(a)(1), reasonable attorney's fees, pre-and post-judgment interest, court costs, and exemplary damages. At this time, it is not possible to calculate a specific dollar amount given the documents withheld by Defendants in this suit, including those being withheld by the ATO. Further, Det. Ahrens contends the City is jointly and severally liable for all damages she is entitled to from other defendants, including the ATO and DPA, and those damages include all amounts subject to the Court's injunction entered against the ATO in this lawsuit.

Katrina provided extensive explanation of the basis for her damages. Furthermore, in her November 5, 2018 grievance that was included with her response to the City's TCPA motion to dismiss, Katrina demanded "my reassignment away from CID be undone, the negative performance rating be expunged from my employment records, the IAD investigation be terminated, and the allegations that led to the opening of that investigation be disregarded."

At this stage, Katrina was not required to produce evidence supporting an amount or the constituent parts of her damages; rather, she needed only to show a factual basis for her damages claim to meet her TCPA burden. *See In re Lipsky*, 460 S.W.3d at 590-91 (holding that pleadings and evidence showing the factual basis for a claim is sufficient to meet the TCPA burden); *see also Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679,

689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (rejecting an argument that the TCPA non-movant needed to adduce more specific evidence about its damages and noting: "But the TCPA does not impose such a requirement. While this evidence could be necessary or at least useful at an eventual trial on the merits, a TCPA non[-]movant is not required to adduce all the evidence that they would, or could, need at trial"). After reviewing the record, we conclude Katrina presented a prima-facie showing that the alleged retaliation caused her injuries, including loss of front pay, loss of fringe benefits and seniority, reassignment and demotion from detective status, and negative performance ratings on her employment record.[3] *See* TEX. GOV'T CODE ANN. § 554.003(a)-(b); *see also In re Lipsky*, 460 S.W.3d at 59-91; *Deuell*, 508 S.W.3d at 689. Accordingly, we conclude that Katrina met her Step Two obligation to present clear and specific evidence of all the essential elements of her claim under the Whistleblower Act.

## STEP THREE

In Step Three of the TCPA analysis, the burden shifts back to the City to prove each essential element of any valid defense by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *Youngkin*, 546 S.W.3d at 679-80; *see also Arey*, 2019 Tex. App. LEXIS 3513, at *3. To meet this burden, the City contends that the affidavit of Sergeant Mills, which was attached to its TCPA motion to dismiss, established the

---

[3] We also note that Katrina, S.A., and M.A. have alleged that certain documents have been withheld by several defendants, including the ATO.

affirmative defense that the City would have taken the same actions toward Katrina regardless of whether Katrina filed this claim or reported any purported violations of the law. In other words, the City attacks the causation element of Katrina's whistleblower action.

Under section 554.004(b) of the Texas Government Code,

[i]t is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

TEX. GOV'T CODE ANN. § 554.004(b). However, the Texas Supreme Court has applied the "but for" causation standard to whistleblower actions, meaning "the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Hinds*, 904 S.W.2d at 636. Under this standard, the City cannot negate the causation element merely by showing that it had other reasons for taking negative personnel actions against Katrina. *See id.; see also Torres v. City of San Antonio*, No. 04-15-00664-CV, 2016 Tex. App. LEXIS 12907, at *13 (Tex. App.—San Antonio Dec. 7, 2016, no pet.) (mem. op.). Rather, in the context of step three in a TCPA claim, the "but for" standard requires conclusive proof that Katrina's report did not play a role, however small, in the City's decision to take negative personnel actions against Katrina. *See, e.g., Torres*, 2016 Tex. App. LEXIS 12907, at **13-14 (citing *Ender v. City of Austin*, No. 03-97-00329-CV, 1997 Tex. App. LEXIS 5571, at **7-8 (Tex. App.—Austin Oct.

23, 1997, no pet.)); *see also City of Fort Worth v. Prigden*, No. 05-19-00652-CV, 2020 Tex. App. LEXIS 4544, at *22 (Tex. App.—Dallas June 18, 2020, pet. filed) (mem. op.).

In her affidavit, Sergeant Mills, Katrina's supervisor from 2013 to October 22, 2018, noted that, on October 8, 2018, she received an email from Amy Derrick, the Chief of the Sexual Assault Unit in the Dallas County DA's Office, which informed her that the DA's Office had rejected a sexual assault case filed by Katrina. The following day, Sergeant Mills called the Dallas County DA's Office and learned that the DA's Office would no longer support any cases filed by Katrina because she had failed to provide required exculpatory information to the DA's Office in two cases. Sergeant Mills further mentioned that Derrick requested that the Internal Affairs Division of DPD investigate Katrina's conduct. Sergeant Mills also denied that the investigation was initiated in response to Katrina's lawsuit or her reporting of alleged violations of law by DPD or the City. Sergeant Mills recounted that, prior to the October 22, 2018 meeting in which Katrina was notified of the assertions made by the DA's Office, she was unaware that Katrina had filed suit against the City. Despite the close temporal proximity to Katrina's reports of alleged violations of law, Sergeant Mills opined that Katrina "was placed on special assignment outside of the Sex Assaults Unit because the DA's Office could no longer support Detective Ahrens's testimony."

Based on a de novo review of the evidence, we cannot say that the City conclusively proved that Katrina's report did not play a role in the decision to take

adverse personnel actions against her when it did. In her response to the City's TCPA motion to dismiss, Katrina included an affidavit and email from Judge Michael Snipes, who was formerly employed by the Dallas County DA's Office as the first assistant to former District Attorney Faith Johnson. In his affidavit, Judge Snipes recounted an email he sent to Katrina's counsel, which noted the following:

> I will bring this to Judge Johnson's attention so that she can make a final decision, but your client [Katrina] is not currently on a no testify list. She can be sponsored as a witness so long as her *Brady* allegations are disclosed. Our office has nothing to do with your client's assignment. Thank you.

This information, coming from an individual who outranked Derrick, contradicts the City's claim that it initiated the investigation and took adverse personnel actions against Katrina at the request of the DA. Thus, there is a fact issue regarding the City's reasons for initiating the investigation and taking adverse personnel actions against Katrina, much of it dependent on the witnesses' credibility. Credibility determinations are the sole province of the fact finder. *See City of Houston v. Levingston*, 221 S.W.3d 204, 229 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting that the jury was the sole judge of witnesses' credibility where the parties presented conflicting evidence regarding the employer's reasons for firing the employee). Accordingly, we conclude that the trial court did not err when it denied the City's TCPA motion to dismiss. *See Holcomb*, 546 S.W.3d at 839; *Tervita, LLC*, 482 S.W.3d at 282; *Johnson-Todd*, 480 S.W.3d at 609; *see also Arey*, 2019 Tex. App. LEXIS 3513, at *3. And as such, we overrule the City's remaining issues.

## Conclusion

Having overruled all of the City's issues on appeal, we affirm the order of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed
Opinion delivered and filed February 23, 2022
[CV06]

